HARMANN, and another, Respondents, v.
FRENCH, Appellant.

*No. 75–122. Argued November 1, 1976.—
Decided December 14, 1976.*
(Also reported in 247 N. W. 2d 707.)

For the appellant there was a brief by *Paul L. Jonjak* and *Ebbeson & Jonjak,* and oral argument by *Paul L. Jonjak,* all of Sturgeon Bay.

For the respondents there was a brief by *Slatky & Wolske* of Kewaunee, and *Bieberstein, Cooper, Bruemmer, Gartzke & Hanson,* and oral argument by *John Bruemmer,* all of Madison.

HEFFERNAN, J. The question on this appeal is whether the trial court properly held that the defendant, Harry R. French, failed to exercise an option to purchase the feed mill property leased to him by Victor Harmann and was holding over beyond the term of the lease, and hence was properly evicted from possession and subjected to double rent as damages for the period of holding over.

We affirm the judgment of the trial court.

The record shows that on September 16, 1972, Harmann as lessor and French as lessee entered into a lease agreement for a feed mill located in the city of Algoma. The lease period ran from the date of execution to July 31, 1973, at a monthly rental of $400.

The lease contained, in parts pertinent to this opinion, the following option to purchase:

"The lessor hereby grants to the lessee, an option to purchase the aforementioned premises and personal property, while said lessee is in good standing under this lease, on the following terms and conditions. The total purchase price for the premises and personal property shall be Forty Thousand ($40,000.00) Dollars, with a minimum down payment of Ten Thousand ($10,000.00) Dollars at the time of exercise of the option, and the balance to be paid within Five (5) years, at an interest rate of Seven and one-half per cent (7½%), per annum. Any payments made on this lease shall be deducted from the down payment, subject to the following. The interest which would accrue on the sum of Forty Thousand ($40,-000.00) Dollars at a rate of Seven per cent (7%) per annum, between September 16, 1972 and the date of the

exercise of the option shall be deducted from the payments made on the lease."

On July 27, 1973, French asked Attorney Blazkovec to prepare an acceptance of the option to purchase. That acceptance was drafted and mailed on that day, but was not received by the owner-lessor, Harmann, until August 1. At trial Harmann contended that the exercise of the option to purchase was untimely because notice of the lessee's acceptance was not received until after the expiration of the lease on July 31. On this appeal, however, counsel for Harmann has abandoned that position and acknowledges that subsequent negotiations for sale of the feed mill, participated in by Harmann, waived any question of the timeliness of the option's exercise.

The record shows that, upon receipt of the notice that French was willing to exercise the option, Harmann went to Attorney Blazkovec and arranged for the drafting of the documents of conveyance and agreed to a closing date of August 7, 1973.

Harmann's trial testimony demonstrates that he went to the closing conference intending to complete the sale, and that at no time did he object to French's late exercise of the option.

Harmann also testified that, despite some additional computations that would have to be agreed upon in respect to the down payment, he would have completed the transaction but for French's insistence that the purchase price be reduced by the cost of repairs to the premises. French demanded that the question of deductibility of repair costs from the purchase price be submitted to arbitration.

Harmann insisted that the option agreement did not contemplate that repair costs not actually incurred be deducted from the purchase price and took the position that the arbitration provisions of the agreement were applicable only to disputes arising during the term of the

lease and were irrelevant to the purchase price upon the exercise of the option.

The lease provided:

"IT IS MUTUALLY UNDERSTOOD AND AGREED: That the lessor shall have no obligation to maintain in working condition the equipment in the mill or any of the fixtures therein, but lessor agrees to maintain the mill structurally, as well as the heating and plumbing equipment therein.

"That in the event of a dispute or controversy arising out of this lease agreement, each party shall upon Ten (10) days written notice select an arbitrator and the two arbitrators so selected shall select a third and the decision of any two of the three arbitrators shall be binding upon the parties."

We conclude that, when French insisted that the purchase price be reduced by such sum as the lessor ought to have expended for structural maintenance during the term of the lease, but for which no prior demand for arbitration had been made, he was proposing a counteroffer and was not exercising the option in accordance with the September 16, 1972, agreement. His acceptance of the option was conditional. At the August 7 closing conference, French conditioned his acceptance upon being given a credit toward the purchase price for repairs for which he believed Harmann responsible.

██ ██ This conditional acceptance was ineffective. An acceptance of an option must be unconditional and must be according to the terms set forth in the option. 1A Corbin, *Contracts*, sec. 264, p. 525; *Edlebeck v. Barnes*, 63 Wis.2d 240, 216 N.W.2d 551 (1974); *Raffensperger v. Van Kooy*, 260 Wis. 589, 51 N.W.2d 488 (1952).

██ As was said in *Hafemann v. Korinek*, 266 Wis. 450, 458, 63 N.W.2d 835 (1954):

"An option binding an owner of real estate to sell on certain terms constitutes an offer. In order that a contract may result therefrom there must be an unconditional acceptance of such offer by the optionee. If . . . the

optionee includes a demand for performance outside of the terms of the option that would impose an additional burden on the optionor, such notice is not deemed to be an acceptance of the offer but instead constitutes a counter-offer."

It is, however, the contention of French that the agreement provided for an offset of repair costs and insistence on the offset did not constitute a counter-offer. That assertion is incorrect. While the lease agreement and the option to purchase were incorporated in a single instrument, they were independent agreements and were interrelated only to the extent set forth—principally that rental payments during the lease period could be applied as a credit toward the down payment upon exercise of the option.

It is clear from the agreement itself that, whatever the obligation of the lessor to repair, that obligation existed only during the period of the lease. There is no evidence that the lessee undertook any repair costs, and the lease had expired when the right of offset against the purchase price was asserted. French no longer had any interest in the lease agreement that warranted the enforcement of its terms.

While arbitration was provided in the event of dispute in respect to the operation of the lease, no such arbitration procedures were made applicable to the exercise of the option.

Only during the term of the leasehold agreement did French have the right to enforce Harmann's duty to repair or to insist upon resolution of that duty by arbitration. The lease terminated by its own provisions on July 31, 1973, and with that date ended any right to enforce the covenants of an ongoing lease. The lease and option were separate agreements, although incorporated into a single document.

French's improper attempt to import the terms of the lapsed lease into the exercise of the option was simply a

counter-offer not contemplated by the agreement. These negotiations never ripened into a contract of sale, and neither party secured the right to specific performance.

Only after trial did French object to Harmann's cause of action for unlawful detainer. French then asserted that Harmann's cause of action could be brought only for ejectment, since French asserted an equitable interest in the property by reason of the right asserted under the option.

Sec. 704.23, Stats., authorizes an action by a landlord to remove a tenant who is holding over and to recover damages. Sec. 704.27 allows as "minimum" damages "twice the rental value apportioned on a daily basis for the time the tenant remains in possession."

It was under these provisions that Harmann brought his action and secured a judgment.

Under sec. 275.10, Stats., the ejectment statute as it existed at the commencement of this action, a successful plaintiff may recover only "damages for the rents and profits of the premises recovered, during the time the same are unlawfully withheld. . . ."

Because the defendant asserted an equitable title arising out of his option to purchase, he now claims that such right could not be terminated by a simple landlord-tenant action under ch. 704, Stats.

We conclude that this question is not before the court. The plaintiff-lessor's theory of the case was that the option right was never exercised and that the status of French was that of a tenant holding over. French did not demur to Harmann's complaint, did not move to dismiss, but answered plaintiff's allegations and counterclaimed, setting forth defendant's affirmative allegations.

By answering and proceeding to trial, the defendant waived any objection to the form of the action. Moreover, we note that dismissals based on mistaken resort to the inappropriate form of common-law pleading

are no longer countenanced. In fact, the codification of the common-law form of action of ejectment heretofore contained in ch. 275, Stats., was repealed by sec. 6, ch. 189, Laws of 1973, and remained effective only for actions commenced prior to July 1, 1974. The question is whether the issues were tried. Here the question of whether the lessor acquired any equitable rights by the exercise of the option was considered by the trial court and resolved against French. It was determined that the status of French was simply that of a tenant holding over after the expiration of the lease. Any issue that could have been raised as a defense to common-law ejectment was raisable in the instant case.

The application of the law to the facts results in the inevitable conclusion that the counter-offer of French was a repudiation of the option, and he had only the rights and obligations of a tenant holding over. The trial judge properly assessed the damages appropriate to an action under ch. 704, Stats.

*By the Court.*—Judgment affirmed.