BURMEISTER, Respondent, v. VONDRACHEK, Appellant.

Supreme Court

*No. 76–107.   Argued November 27, 1978.—Decided January 9, 1979.*
(Also reported in 273 N.W.2d 242.)

654

For the appellant there was a brief by *Flynn & Flynn* of Racine and oral argument by *Gerald T. Flynn*.

For the respondent there was a brief by *Thomas J. Basting* and *Brennan, Steil, Ryan, Basting & MacDougall, S. C.,* of Janesville, and oral argument by *Thomas J. Basting.*

CONNOR T. HANSEN, J. In April, 1973, Vondrachek executed and delivered a deed for his farm to Burmeister. The facts and circumstances surrounding this transfer of title are the basis for this litigation.

On April 9, 1974, Burmeister served a notice to remedy default of tenancy at will or vacate on Vondrachek. On May 21, 1974, Burmeister commenced a ch. 299, Stats., eviction against Vondrachek in the small claims court of Racine county. The complaint alleged that Burmeister was the owner of the property; that pursuant to an agreement between the parties, Vondrachek was to make certain payments and share certain expenses as rent, and that Vondrachek had failed to make these payments.

Vondrachek answered, denying that Burmeister was the owner and that a rental agreement existed. He also filed a counterclaim alleging fraud or mistake in procuring the deed, requested a jury trial and paid the required fee. Pursuant to the provisions of sec. 299.21, Stats., the case was thereupon transferred to county court and ultimately reassigned to the circuit court for trial.

Trial was held January 27–28, 1976. Burmeister was the only witness to testify. He testified that sometime in 1972 he and Vondrachek had discussed entering into some type of partnership or joint venture with regard to Vondrachek's farm, but that no definite agreement had ever been reached. He said he had attended a foreclosure sale of the farm late in 1972, and that Vondrachek's brother-in-law purchased the farm at that sale for $85,-000. Apparently that sale was not completed and a sec-

ond foreclosure sale was scheduled for April, 1973. Burmeister testified that Vondrachek came to him on a Saturday several days before the sale to ask for financial help. He said that day they entered into an agreement under which he was to get a deed to the entire farm in exchange for $50,000 which was to be used to pay the federal mortgage and several other outstanding liens against the farm. He was also to furnish any necessary farm equipment and pay half of the farm's operating costs. Vondrachek would continue to live on the farm. He was to work the farm and pay half the operating costs, taxes and interest on Burmeister's loan. He was also to pay off all the liens in excess of the $50,000. If Vondrachek fulfilled all these obligations Vondrachek was to get half interest in the farm.

Burmeister arranged to borrow $50,000 and they both went to the office of Charles Lepp, a lawyer who was under retainer to Burmeister; however, his firm had represented Vondrachek in an accident matter. Lepp drafted a warranty deed to Burmeister which Vondrachek executed. They gave Lepp a check for $8,000 which he was to use to pay off some of the liens against the property. They then went to the county courthouse and recorded the deed. Finally they went to the federal building in Milwaukee where they paid off the mortgage.

Farming operations were conducted during the summer of 1973. Burmeister testified that he paid all the farming expenses that year. He also said that in September, 1973, he paid an additional $9,000 to $10,000 for liens that Vondrachek had failed to satisfy. Vondrachek did perform some work on the farm and was given half the crop. Burmeister said that throughout the summer and fall of 1973, he had frequently demanded that Vondrachek pay the liens and his share of the expenses. Finally in February, 1974, Burmeister sent Vondrachek a letter of accounting demanding that he either pay the

amounts due or leave the farm. Vondrachek refused and Burmeister ultimately commenced eviction proceedings.

It appears that Charles Lepp was unable to appear at trial as a witness because of recent surgery. However, a portion of his deposition is included in the record. In it he states that the warranty deed was to serve as a security device and that he was representing Burmeister at the time he drafted the deed.

Vondrachek did not testify. From his pleadings and his lawyer's questions at trial it can reasonably be concluded that he believed he had sold Burmeister a one-half interest in the farm in exchange for removing all the encumbrances which he said totalled approximately $50,-000. He alleged that they agreed they would operate a gravel business on the farm and would share expenses 50–50. He alleged that Burmeister had unilaterally decided to have the oral agreement committed to writing and that when he signed the deed he did so believing that it contained the terms he had agreed to orally. He alleged that the deed conveyed full title because of a fraud or mistake on Burmeister's part and that it should be reformed to convey only a one-half interest. He alleged that the farm was worth $600,000.

On January 28, 1976, the second day of the trial, the parties negotiated throughout the morning and reached a settlement shortly before noon. The stipulation of settlement was recited in the record and provided that:

". . . [T]his matter will be settled by the Plaintiff, Mr. Burmeister, in effect purchasing any and all interests which Mr. Vondrachek may have in the subject property for the sum of sixty-two thousand five hundred dollars. Mr. Vondrachek shall have until July 1st, 1976, to vacate the premises, and vacate the premises including—means including any and all machinery and personal property under his control by that date or sooner if he desires. Mr. Burmeister shall have one hundred and twen-

ty days, we agreed to that, to pay the settlement proceeds to Mr. Vondrachek."

Both parties agreed, in response to the trial court's question, that the terms of the settlement were satisfactory and that they would be bound by it. The court imposed a condition that the public costs, such as jurors' and bailiffs' fees, of this action be paid before litigation could be reinstituted.

The closing, which under the terms of the stipulation should have been held on or before May 28th, was finally scheduled for June 16, 1976, with an extension for vacating given to July 16th. Vondrachek and his trial counsel terminated their relationship several days before June 16, 1976, and Vondrachek attended the closing but refused to go through with the transaction as agreed in the stipulation of settlement.

On June 18, 1976, Vondrachek's trial counsel petitioned to withdraw from the action. The same day Burmeister moved to enforce the stipulation. On June 28, 1976, by the lawyer now representing him on this appeal, Vondrachek moved to be relieved of the stipulation and for dismissal of the action or for a return of the action to small claims' court.

A hearing was held on these motions on July 16, 1976. Vondrachek's trial counsel testified that Vondrachek objected to the settlement for reasons other than the closing date. He said Vondrachek wanted a portion of the purchase money prior to the closing and wanted 120 days from the day of closing in which to vacate. Trial counsel admitted that he did not have Vondrachek's express permission to extend the closing date, but said that since Vondrachek had not asked for an early closing but had instead asked for more time in which to move, he felt that the June 16th closing would meet with Vondrachek's approval. He said Burmeister had been ready to close since early May but that the lawyers could not agree

on a date. He said Vondrachek came to his office after receiving his June 7th letter informing him that closing was set for June 16th. He said at that meeting Vondrachek expressed dissatisfaction, not with the delayed closing, but with the fact that he had not been given a portion of the purchase money earlier. A mutual termination of the attorney-client relationship occurred at this meeting.

At the July 16, 1976, hearing, Vondrachek testified that he had repeatedly asked his lawyer to get him an extension of time in which to move. He said he also asked for an earlier closing so he could purchase another farm. However, he also testified that all he wanted was equal time in which to move. Although he said he expected the closing to occur on May 27th, he said he did not complain about that date until after he received the June 7th letter setting the closing for June 16th.

At the close of the hearing the trial court granted Burmeister's motion to enforce the stipulation and denied the motions of Vondrachek. The court observed that the granting of relief from a stipulation is within the court's discretion. The court found that Burmeister was at all times ready to pay the $62,500 and that the closing was postponed because of the lawyer's scheduling conflicts. The court concluded that Vondrachek had been helped, not harmed, by the brief delay and that his attorney had the authority to agree to it in light of his repeated requests for more time. The court found no evidence of fraud, misrepresentation, undue influence or improper inducement. From the bench on July 16th, the court ordered Burmeister to pay the $62,500 to the clerk of courts (which he had already done). The court ordered the clerk to pay out of the sum both Vondrachek's trial counsel's fees and a lien held by the Waukesha State Bank which Vondrachek had agreed to pay as part of the settlement. The clerk was to pay the balance to Von-

drachek. The court ordered Vondrachek to vacate by August 17, 1976. A written order was entered on July 30, 1976. Vondrachek appeals from this order.

The issues on appeal are:

1. Whether the trial court abused its discretion in denying the appellant relief from the stipulation because:

a. The circuit court did not have jurisdiction of the action?

b. The settlement was merely an oral contract which was unenforceable or could be rescinded?

c. The settlement was unconscionable or procured through fraud or mistake?

2. Whether the respondent should be awarded double costs on appeal?

Appellant contends that because the action was brought as an eviction action in county court under ch. 299, Stats., and because the respondent failed to allege a landlord-tenant relationship, the circuit court was without jurisdiction.

Sec. 299.40(1), Stats., provides that a person entitled to the possession of property can bring an eviction action against one not so entitled. Sec. 299.41, contains the requirements for an eviction complaint. It must be in writing, be subscribed by the owner or his attorney, it must identify the parties and the property and must state the facts which authorize the tenant's removal. The respondent's complaint complies with these requirements. It alleges that respondent owns the property, that appellant has defaulted in the payment of certain sums deemed to be rent and that he has been given notice of the default. Appellant's answer puts these allegations into issue but does not render the complaint ineffective. Ownership, a landlord-tenant relationship and default have become issues of fact to be determined at trial.

Subject matter jurisdiction is the power to hear the kind of action brought. It does not depend on the sufficiency of the complaint or the plaintiff's right to relief. *Estate of Markofske,* 47 Wis.2d 769, 773, 774, 178 N.W.2d 9 (1970).

Appellant seems to be arguing that because the payments to be made here were pursuant to a contract between the parties and because these payments did not fit the usual form of periodic rental payments that a landlord-tenant relationship did not exist. If a landlord-tenant relationship requires the periodic payment of rent the definition of tenancy at will given in sec. 704.01(5), Stats., would be meaningless. A tenant at will occupies the property with the permission of the landlord but without a lease or the periodic payment of rent. A tenant at will who breaches a condition of the tenancy may be given a five-day notice to cure default or vacate under sec. 704.17(2)(b), Stats. The arrangements here could be considered a tenancy at will. Regardless of the label applied to the relationship, respondent complied with the statutory requirements for bringing an eviction action. Therefore, the jurisdiction of the county court was properly invoked.

Appellant could have initially challenged the jurisdiction of the court but chose instead to answer and counterclaim. In his counterclaim appellant alleged fraud or mistake in procuring the deed, requested reformation of the deed and demanded a jury trial. Sec. 299.43, Stats., permits a defendant in an eviction action to counterclaim with any claim related to the rented property. Sec. 299.-02(1), Stats., requires a defendant who makes a counterclaim which is beyond the limitations of ch. 299 to pay the additional clerk's fees and the action is then to be tried under Title XLII-A (ch. 801 et seq.) procedure.

This is because the summary nature of eviction proceedings precludes the consideration of issues beyond the right to possession. *Clark Oil & Refining Corp. v. Leistikow,* 69 Wis.2d 226, 235, 236, 230 N.W.2d 736 (1975). In addition, sec. 299.21, provides that where a party demands a trial by jury in a small claims' action the court is to proceed as though the action was brought as a Title XLII–A proceeding either by placing it on the county court calendar or transferring it to the circuit court for trial. Finally, sec. 256.58(2), Stats. (now sec. 757.58) provides that an action pending in county court which will be tried by a 12–person jury may be transferred to circuit court. This last section was invoked to transfer the present case to circuit court.

In the hearing on appellant's motion for relief from the stipulation on July 16, 1976, the trial court dismissed this challenge to jurisdiction by stating that the action had been transferred to circuit court at appellant's request, that he had paid the additional filing fee of $14.50 and had asked that the matter be heard under Title XXV (now XLII–A) proceedings.

This case is similar to *Harmann v. French,* 74 Wis.2d 668, 247 N.W.2d 707 (1976). The plaintiff there had brought an eviction action in county court. After trial the defendant objected to the trial court's jurisdiction, contending that the plaintiff should have brought an ejectment action. This court there held that the appellant-defendant had waived any right to object to the form of the action by answering and making a counterclaim instead of demurring. This court also stated that the issues raised had been tried and that any defense that could have been presented in an ejectment action was available to the defendant in the eviction action.

The same reasoning applies here. Perhaps an ejectment action would have covered the facts just as ade-

quately, but even if it would have, appellant cannot escape the terms of the stipulation of settlement on that basis. The case was heard in the forum of appellant's choice. This forum had jurisdiction over ejectment actions and all the issues appellant chose to raise were heard. The action followed the statutory procedure in reaching the circuit court. No valid basis exists for objecting to the circuit court's jurisdiction.

Appellant next contends that the stipulation of settlement is an oral contract and therefore is unenforceable because it does not comply with the statute of frauds; that it is not conclusive because it did not settle all the issues then before the court; and since it is a contract, appellant may rescind and face a suit for damages for breach. Appellant cites only cases in contract law for these conclusions. He ignores two statutes and the cases construing them which contain the law of this state regarding stipulations of settlement made in a matter of record in open court.

Under sec. 807.05, Stats., a stipulation is binding if it is made in court and recorded by the reporter. *Czap v. Czap*, 269 Wis. 557, 560, 69 N.W.2d 488 (1955). Both parties here agreed to the terms of the settlement in open court and on the record. This stipulation is not a void oral contract.

The terms of the stipulation made it clear that the agreement was intended to settle the matter then before the court. There was no indication that any issues relating to the real estate were to be resolved at a later date. The trial court stated that the court's authority would be used, if necessary, to insure that the terms of the stipulation were carried out and a condition was imposed on reinstituting litigation. We conclude that it was the unequivocal intent of both parties and the trial

court that the stipulation settled the entire action and that it was not an agreement collateral to any action relating to the future sale of the farm.

Finally, although these stipulations of settlement have occasionally been referred to as contracts, they are not governed by contract law. *See, e.g.: Hansen v. Oregon,* 11 Wis.2d 399, 402, 105 N.W.2d 815 (1960) ; *Thayer v. Federal Life Ins. Co.,* 217 Wis. 282, 285, 258 N.W. 849 (1935). Such stipulations may be enforced by the court and may only be avoided with the court's approval. Sec. 806.07 (1), Stats., *Pasternak v. Pasternak,* 14 Wis.2d 38, 109 N.W.2d 511 (1961) ; *State ex rel. Southern Colonization Co. v. Circuit Court,* 187 Wis. 1, 203 N.W. 923 (1925).

Sec. 806.07 (1), Stats., grants trial courts discretionary authority to relieve a party, on motion, from a stipulation. The appellant argues that the trial court abused its discretion in not granting such relief.

Relief from a stipulation may be granted where the moving party shows that the stipulation was agreed to because of fraud, mistake or misrepresentation:

". . . The discretion of the trial court to relieve parties from stipulations when improvident or induced by fraud, misunderstanding or mistake, or rendered inequitable by the development of a new situation, is a legal discretion to be exercised in the promotion of justice and equity, and there must be a plain case of fraud, misunderstanding or mistake to justify relief. *Illinois Steel Co. v. Warras* (1909), 141 Wis. 119, 123 N.W. 656." *Schmidt v. Schmidt,* 40 Wis.2d 649, 654, 162 N.W.2d 618 (1968).

In *Pasternak, supra,* where the plaintiff brought an action for possession of a farm which was occupied by the defendants, the action was settled with a stipulation. In upholding the trial court's refusal to grant relief from the stipulation this court explained:

"The fact that a settlement appears by hindsight to have been a bad bargain is not sufficient by itself to warrant relief . . . The terms of the settlement were by no means so unfavorable as to lead to the inference that [the appellant] could not have understandingly assented to it. Considering all the circumstances, we find no abuse of discretion on the part of the circuit court in refusing to set the judgment aside." *Id.* at 46.

At the hearing on the motion appellant attempted to prove that the respondent fraudulently induced him to sign the warranty deed by leading him to believe that it conveyed only a half-interest in the property. This issue was settled when appellant agreed to the stipulation. It is not the fraud relied on now to justify relief from the stipulation. In moving to have the stipulation set aside appellant is arguing that he only agreed to the stipulation because he was so disturbed by respondent's contention that he owned the entire farm and by the fact that Lepp would not be there to testify on his behalf. What appellant really is arguing is that the court proceedings placed him under a great deal of stress and that he was induced to settle because he was afraid he would lose. Such an argument will not support a contention that the trial court abused its discretion in denying the motion of the appellant.

Appellant does not suggest that he did not understand the settlement terms, or that any misrepresentation was made to induce him to agree to the settlement. He does contend that the stipulation was unconscionable, but its terms do not support such a charge. At the time of trial appellant had already received benefits in excess of $60,-000 in exchange for his interest in the property. He had also been allowed to remain on the property for almost three years past the date on which he would have lost the property at the foreclosure sale. Pursuant to the

stipulation he was to receive an additional $62,500 in four months and was given five months in which to find another place to live. While appellant might have done better if he had been able to sell the farm on the open market, the terms of the settlement did put him in a much better position than the one he found himself in in April, 1973, when he was faced with a second foreclosure sale.

Appellant also contends that he should be relieved of this stipulation because respondent violated its terms in setting a closing date more than 120 days after the agreement. As the trial court found, respondent was ready to close early in May. The closing was delayed only because the parties' lawyers could not find a mutually agreeable time. Appellant's trial lawyer was of the opinion that the late closing would meet with appellant's approval because he had frequently requested an extension on his moving date. Appellant's own testimony indicates that more time was his primary interest. There is nothing in the record to indicate that the appellant was prejudiced by the twenty-day delay and he received a comparable extension of time in which to vacate the premises. Appellant now suggests he wanted to purchase another farm and was unable to do so; however, there is no evidence that the relatively short delay in the closing was the cause of such a problem.

The trial court's refusal to set aside this stipulation was not an abuse of discretion.

Respondent requests double costs on appeal because appellant failed to include the July 16, 1976, hearing in his appendix. Since the issue on appeal was whether the trial court abused its discretion in denying appellant's motion, a motion which was considered at the July 16th hearing, the testimony given and arguments made at

that hearing were essential to the appeal. Sec. 751.38(2), Stats., provides:

*"751.38 . . .*
"(2) Where it satisfactorily appears that the rules relating to the preparation and printing of a brief, including the appendix, have been flagrantly disregarded or there is an absence of a good faith attempt to comply therewith, the court may in its discretion deny to or impose costs against the offending party or strike the brief from the files."

Although this section has now been replaced with sec. 809.19(2), Stats., it still applies to briefs filed prior to August 1, 1978.

Appellant's brief complies with the statutes in all other respects. Although the failure to include this hearing was inexcusable, it has not so seriously inconvenienced the court or the respondent as to justify double costs. It is our opinion that it would be inappropriate to tax double costs in this case.

A further matter requires our consideration. After the appeal was perfected and in August, 1976, appellant, Vondrachek, applied to this court for a stay of the decree of the trial court pending this appeal. The decree of the trial court required him to vacate the premises and remove all his personal property and machinery from the premises by August 17, 1976. Respondent, Burmeister, approved the granting of such a stay.

Sec. 817.20, Stats., provides as follows:

". . . If the judgment appealed from direct the sale or delivery of real property execution shall not be stayed unless an undertaking be executed on the part of the appellant, by at least two sureties, in such sum as the court or the presiding judge shall direct, to the effect that, during the possession of such property by the appellant, he will not commit or suffer to be committed any waste thereon; and that if the judgment be affirmed he

will pay the value of the use and occupation of the property from the time of the appeal until the delivery of possession thereof, pursuant to the judgment."

August 23, 1976, this court entered an order staying the July 30, 1976, decree of the trial court on condition that appellant file an undertaking in conformance with the statutory provisions in the amount of $50,000. The order further provided that the respondent be permitted to withdraw $62,500 which he had paid into the office of the clerk of court for Racine county, without prejudice to his tender pursuant to the decree of July 30, 1976.

The order further provided that the appellant pay the value of the use and occupancy of the property from the time of the appeal until the delivery of possession and fixed the value of the use and occupancy at $20 per day, "subject to redetermination." This per diem amount was arrived at by considering interest on the $62,500 then on deposit with the clerk of court of Racine county, real estate taxes and insurance. At oral argument, it was represented that $62,500 had been withdrawn from deposit; that the appellant was occupying the house on the premises and that the respondent was using the farm land. The precise details relating to these matters are, of course, not a matter of record. It therefore is necessary that the cause be remanded for a determination of the amount, if any, that appellant, Vondrachek, should pay as the value of use and occupancy of the premises from the time of appeal until delivery of possession.

*By the Court.*—Order affirmed and cause remanded for further proceedings.