Alice H. KOCINSKI, Plaintiff-Appellant-Petitioner,

v.

THE HOME INSURANCE COMPANY, a foreign corporation, Robert S. Ondrejka, and City of Milwaukee, a municipal corporation, Defendants-Respondents-Petitioners.

Supreme Court

*No. 87-1640. Submitted on briefs October 5, 1989.—Decided March 13, 1990.*

(Also reported in 452 N.W.2d 360.)

For the plaintiff-appellant-petitioner, there were briefs by *Alice H. Kocinski,* pro se, Milwaukee.

For the Home Insurance Company and Robert S. Ondrejka, there were briefs by *Ronald L. Piette, Brian J. Frank,* and *Piette, Nelson, Zimmerman & Dries, S.C.,* Milwaukee.

For the City of Milwaukee, there were briefs by *Scott G. Thomas,* assistant city attorney.

CHIEF JUSTICE HEFFERNAN. This is a review of a decision of the court of appeals, 147 Wis. 2d 728, 433 N.W. 2d 654 (Ct. App. 1988), which reversed[1] an order of the circuit court for Milwaukee county, Charles L. Larson, Reserve Judge, directing the plaintiff Kocinski to enter into a settlement of her cause of action against the city of Milwaukee and other named defendants. We affirm that decision but direct that the cause be remanded to the circuit court for trial.

Two questions are posed on this appeal. We address both, although only the answer to one is dispositive. The first question is whether a stipulation under the terms of

[1]The mandate of the court of appeals states that the order of the trial court is affirmed in part and reversed in part. The mandate is inconsistent with the opinion. While the court of appeals concluded that the trial court correctly concluded that the stipulation was properly "subscribed," it held that, under the facts—disputed facts the court of appeals believed—the matter could not be resolved but must be remanded for further factfinding. The order of the trial court that would compel the plaintiff to proceed to settlement was set aside. Hence, the mandate of the court of appeals properly stated should have been "Reversed and remanded."

sec. 807.05, Stats. 1985–1986,[2] is formally sufficient when the name of the party to be bound or the party's attorney appears as a stamped facsimile signature at the foot of one of the documents comprising the stipulation rather than being a personally handwritten signature.

We conclude, as did both the trial court and the court of appeals, that such stamped facsimile name satisfies the statutory requirement that the document be "subscribed" by the party to be bound.

Because the parties have extensively briefed this issue and it is one that is likely to recur, we address it, although its resolution does not control the disposition of this case.

The controlling issue is whether the stipulation of settlement, even if properly "subscribed," was enforceable where the plaintiff withdrew her offer to settle prior to the Milwaukee Common Council's acceptance of the settlement. We conclude that the stipulation, by its terms and as a matter of law, was unenforceable until such time as the plaintiff's unrevoked offer to settle was accepted by the Milwaukee Common Council, the body which alone had the authority to come to a settlement agreement with the plaintiff. Because our resolution of this issue nullifies the proposed settlement, the case must be returned to the circuit court for trial or other proceedings.

The facts are simple and not in dispute. The chronology is, however, significant. On September 3, 1982,

---

[2]Section 807.05, Stats. 1985–1986, provides:

**Stipulations.** No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court and entered in the minutes or recorded by the reporter or *made in writing and subscribed by the party to be bound thereby or the party's attorney.* [Emphasis supplied.]

Alice Kocinski was injured in a boating accident on the Milwaukee River, allegedly as the result of the city of Milwaukee's negligence in failing to properly light a city-owned barge. Proper claims procedure mandated in suits against cities was followed, an action was timely brought, and answers by the city and the individual defendant, Robert S. Ondrejka, and his insurer, The Home Insurance Company, were filed. Before trial and after issue was joined, settlement negotiations were commenced.

On April 13, 1987, Kocinski's attorney wrote to the attorneys for the defendants and also to Kocinski, stating that the letter was in confirmation of telephone conversations between the parties on April 10, 1987.

Pertinent to this review are the following excerpts from that letter:

> [I]t was agreed [in the prior telephone conversations] that this matter is settled for a total payment to Alice Kocinski of $260,000.
>
> . . .
>
> It is my understanding that the City of Milwaukee will pay a total of $170,750. It is further my understanding that [Home Insurance and Ondrejka] will pay a total of $89,750. Upon receipt of this money from the parties, Alice Kocinski will execute the required Releases.
>
> Although I understand that Mr. Konrad [the Deputy City Attorney] must proceed through the Common Council for final approval of this payment, it is my understanding that this step will be accomplished as quickly as possible by Mr. Konrad.
>
> . . .
>
> If any of you have any disagreement with any part of this letter, please contact me immediately.

[Black redaction bar]

Very truly yours,
HABUSH, HABUSH &
DAVIS, S.C.
[Stamped name]   Gary R. Kuphall
Gary R. Kuphall

.   On the same day Deputy City Attorney Konrad wrote to counsel, stating, *inter alia,* "The settlement agreement is subject to the approval of the Common Council of the City of Milwaukee."

The record summarized by the court of appeals demonstrates that Kocinski promptly objected to the terms of the proposed settlement because, she claimed, on the date of her counsel's confirmatory letter she, for the first time, discovered additional disabling residuals from the accident—residuals which she felt entitled her to additional compensation.

On April 22, 1987, Robert Habush, senior partner of the firm representing Kocinski, wrote to the trial judge advising him that there had been an "attempt," with Kocinski's approval, to settle the case and that a settlement figure of $260,000 had been agreed to. He also told the judge that Kocinski had subsequently withdrawn her consent to the agreement. He asked the trial judge for "help in convincing the client that it is in her best interest to accept this settlement." A copy of this letter reciting Alice Kocinski's decision to withdraw from the proposed settlement, was sent to Deputy City Attorney Konrad.

Attempts to change Kocinski's mind failed, and in May of 1987 defendants brought motions asking the court to enforce by order the settlement referred to in the telephone conversations of counsel and memorialized in the letters exchanged between Kocinski's attorney and the City Attorney in April of 1987. It was the posi-

tion of the defendants that the exchange of letters, subscribed by Kocinski's attorney and attorneys for the defendants constituted a binding stipulation which complied with all the formal requisites detailed by sec. 807.05, Stats.[3]

The motion to determine whether the stipulation of settlement conformed to the formal requirements of sec. 807.05, Stats., was heard by Judge Charles L. Larson on June 29, 1987. At the hearing, the city and the other defendants argued that, contrary to Kocinski's position, a stamped signature of Kocinski's counsel satisfied the requirement of sec. 807.05 that the stipulation be "subscribed" by the party to be bound or the party's attorney.

Surprisingly, although the pre-motion-hearing correspondence made clear that Kocinski had revoked the offer to settle prior to any action by the Common Council of Milwaukee, counsel for the defendants in their motions gave their attention only to whether the stipulation was subscribed as required by sec. 807.05, Stats., and whether there was cause, under sec. 806.07[4] to set aside the stipulation on grounds of newly discovered evidence, i.e., the claim that Kocinski did not discover additional bladder disability (chronic incontinence) until after her initial offer of settlement.

Evidence was adduced that tended to show that the now newly claimed disability reasonably was known to

---

[3]All statutory references are to the 1985–1986 statutes.
[4]Sections 806.07(1)(b) and 1(h), Stats., provide:

806.07(1)   On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
(b)   Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);
(h)   Any other reasons justifying relief from the operation of the judgment.

Kocinski at the time of her acquiescence in the settlement. Because of our disposition on other grounds, we do not have reason to address the question of newly discovered evidence. Counsel for Kocinski repeatedly attempted to call the court's attention to what he considered to be the crucial event—the withdrawal of Kocinski's offer to settle prior to any action by the Common Council to accept the offer of settlement. He argued that the offer of Kocinski was a conditional one, conditional upon the timely acceptance of the offer by the defendants. He pointed out that his client's offer to settle had been revoked prior to any acceptance by the appropriate body, the Common Council. He asserted that, whether or not the offer of settlement was formally correct under sec. 807.05, Stats., it was revoked prior to acceptance. The only response of the city attorney was that stipulations under sec. 807.05 are not governed by contract law and the only relief from such stipulation was by meeting the requirements of secs. 806.07(1)(b) and 805.15(3), Stats.[5]

This argument of plaintiff's counsel—that the offer was revoked—which we conclude raises the dispositive issue, was not addressed at all by the judge. He correctly concluded that the document was not deficient because of the stamped signature, because the stamp satisfied the requirement of sec. 807.05, Stats., that it be "subscribed." He also held that there was no newly discovered evidence sufficient to warrant upsetting the settlement.

The order filed July 17, 1987, denominated "final," directed enforcement of the settlement and ordered dismissal of the complaint upon the defendants paying the agreed-upon sums and the execution of releases. On July

[5] Section 805.15(3) sets the standards for newly discovered evidence which will justify the ordering of a "new trial."

28, 1987, the Common Council by resolution accepted the "offer of settlement."

The settlement payment was refused, and Kocinski brought her appeal from the order of the circuit court compelling settlement. The court of appeals agreed with the determination of the circuit court that the rubber-stamped signature of Kocinski's attorney satisfied the requirement that the writing under sec. 807.05, Stats., must be "subscribed" by the party to be bound or the party's attorney; and the court of appeals correctly pointed out that the requirement that a name be "subscribed" is to be distinguished from the requirement that there be a "signature." We agree that the argument of Kocinski, again asserted in this court, that sec. 990.01 (38), Stats.,[6] requires the name be a personal hand-written signature misses the mark. A signature is not required by sec. 807.05. The question here is controlled by long established and unquestioned Wisconsin case law. *Mezchen v. More,* 54 Wis. 214, 219, 11 N.W. 534 (1882), established that, under the statute then in effect, which provided that a summons in a civil action shall be "subscribed" by the plaintiff or his attorney, it was not necessary that the name of the plaintiff or his attorney be written in his own hand at the bottom of the summons, but could be printed. As a reading of the *Mezchen* opinion demonstrates, its holding was consistent with law long established even then. There is no doubt, to the extent it has any relevance, the settlement "stipulation,"

---

[6]Section 990.01(38), Stats., provides:

SIGNATURE. If the signature of any person is required by law it shall always be the handwriting of such person or if he is unable to write, his mark or his name written by some person at his request and in his presence.

if such it was, conformed to the formal requirements of sec. 807.05.

To place much emphasis on these formal requirements begs the question. It appears that is what the trial court did, because, once it found that the document was properly subscribed in conformance to the formal requirements of sec. 807.05, Stats., it was valid and enforceable unless equitable relief was available under sec. 806.07(1)(b). The trial judge found no good cause for such equitable relief and ordered that the settlement be enforced.

The court of appeals agreed with the circuit court that the formal requirements of a "subscribed" name had been met, but had reservations about what it referred to as "the nature of the settlement agreement." Accordingly, it remanded the cause for factfinding to determine the parties' intent. Did the agreement between counsel referred to in the letter of April 13, 1987, constitute the settlement, subject only to the perfunctory ministerial acquiescence of the Common Council, or was it merely an offer by Kocinski that could only ripen into a settlement upon its acceptance by the Common Council prior to any change of heart by Kocinski? The majority of the court of appeals concluded that the subjective intent of the parties had to be ascertained as a matter of fact by further proceedings before the question could be resolved. That conclusion was erroneous. We agree with the opinion of the dissenting judge that the nature of the agreement is to be determined wholly as a matter of law. The dissenting judge correctly stated:

> [N]o amount of evidence would be able to show when the City accepted a settlement agreement, other than when the common council accepted a proposal which had already been revoked by Kocinski.

65

147 Wis. 2d at 749 (Moser, J., dissenting).

Moreover, the subjective intent of the parties under the facts here is irrelevant in respect to the legal determination of when the settlement could first be said to spring into life. Under the law of Wisconsin and the law of municipal corporations generally, on the basis of undisputed facts it can be said with certainty that no settlement was ever reached in the instant case.

The law in respect to the authority of city attorneys is clear. Charles Rhyne asserts the universally accepted generalization:

> The city attorney generally has power to institute court actions, and defend actions against the municipality. However, he may not . . . compromise claims and consent to judgments against the municipality . . ..

Rhyne, *Municipal Law,* ch. 6, p. 95 (1957); *see also,* 10 McQuillin, *Law of Municipal Corporations,* sec. 29.15, p. 254 (3d ed. 1981).

The city attorney's brief acknowledges the lack of authority to bind the city to a settlement. He seeks, however, to bind Kocinski by asking us to construe the documents as an option contract which would hold the plaintiff to her offer, but leave the municipality the freedom to reject. This argument by the city attorney, therefore, recognizes that the documents proffered were at the most an offer, and not a memorialization of a settlement already completed. The city attorney would have us resolve this dispute by having us conclude that the plaintiff's offer was irrevocable and, hence, was timely accepted by the Common Council.

66

First, we should put aside any confusion which may arise from prior statements by this court that, although settlement agreements under Rule 807.05, Stats., "have occasionally been referred to as contracts, they are not governed by contract law." *Burmeister v. Vondrachek,* 86 Wis. 2d 650, 664, 273 N.W. 2d 242 (1979). In *Burmeister,* the claim was that the oral stipulation of settlement was an oral contract in violation of the statute of frauds and, hence, was void. Justice Connor T. Hansen, writing for the court, carefully pointed out that the agreement was not to sell real estate, but to settle the pending lawsuit and, hence, did not fall within the statute of frauds' proscription of oral contracts for the sale of realty.

The court of appeals concluded that, "Principles of contract law may thus illumine our inquiry." 147 Wis. 2d at 738. In this case, it does more than that. Contract law is dispositive. It should be pointed out that there may well be stipulations as to procedure and formalities in the course of trial that do not implicate contract law at all, but it goes too far to say that contract law is inapplicable to all agreements reached under sec. 807.05, Stats.

It is, however, correct to say, as did the court of appeals in *Adelmeyer v. Wis. Electric Power Co.,* 135 Wis. 2d 367, 369, 400 N.W. 2d 473 (Ct. App. 1986), "[T]he statute [807.05] is an exception to the usual rule that oral contracts are binding." But it is incorrect to say that sec. 807.05 operates to make enforceable as a contract a putative agreement that is not a contract, just because the formalities of that statute have been observed. Section 807.05 *adds* requirements for enforceability of an otherwise valid agreement when the agreement is reached in the course of a claim that is in the process of adjudication. An oral contract reached by

stipulation in the course of court proceedings is unenforceable unless formalized in the way required by sec. 807.05. *Thayer v. Federal Life Ins. Co.*, 217 Wis. 282, 285, 258 N.W. 849 (1935), specifically states that the statute does not deny stipulations that are in fact contracts the "sanctity" afforded ordinary contracts. *Logemann v. Logemann*, 245 Wis. 515, 517, 15 N.W. 2d 800 (1944), points out that the statute did not purport to "modify accepted contract law."

*Southern Colonization Co. v. Howard Cole & Co.*, 185 Wis. 469, 201 N.W. 817 (1925), and *Illinois Steel Co. v. Warras*, 141 Wis. 119, 123 N.W. 656 (1909), thoroughly discuss the status of an in-court stipulation and under what circumstances the stipulation is to be treated as a contract rather than an understanding for the convenience of the parties and the court to obviate procedural and evidentiary obstacles.

One of the bases, reiterated in the majority opinion of the court of appeals, for the rationale that stipulations of settlement not be treated as contracts is that relief from them is to be granted only under sec. 806.07(1), Stats. We note, however, those are standards that are very congruent with the equitable standards that permit relief from a voidable contract, *e.g.*, sec. 806.07(1)(a), "Mistake, inadvertence, surprise, or excusable neglect," and sec. 806.07(1)(c), "Fraud, misrepresentation, or other misconduct of an adverse party." See, *Corbin on Contracts*, secs. 6, p. 10, and 622, p. 563 (one volume ed. 1952).

In the instant case, there is no doubt that, from a formal point of view, a stipulation was entered into in conformance with sec. 807.05, *i.e.*, it was in writing and it was properly subscribed. But its only legal effect was to memorialize that Kocinski was making an offer that could be accepted by the Common Council, and upon

such acceptance the offer would ripen into a settlement. This is all it purported to be, and all it could be is governed by well settled principles of law.

As stated above, a city attorney cannot make a valid contract on behalf of the city unless he has prior authority to do so. Only the municipal council has that authority or the authority to delegate that authority. See Rhyne and McQuillin, *supra.* Wisconsin law is in accord. See *Probst v. Menasha,* 245 Wis. 90, 94, 13 N.W. 2d 504 (1944). The city attorney acknowledges that he has no authority to contract a settlement for the City of Milwaukee except where the amount to be paid is $2,500 or less. The latter authority is specifically delegated to the city attorney by an ordinance that became effective by common council action on October 22, 1985. No other delegation of authority to settle on behalf of the city is even asserted.

The commonly understood rationale which governs the settlement authority of a city, and specifically of the City of Milwaukee, is carefully set out in the dissent of Judge Moser. He summarizes his conclusions at pp. 758-59:

> The above review of legislation surveys state law and provides two conclusions. First, only the common council of a city controls its finances. It alone can levy taxes to obtain monies needed to run the city government, and it alone can appropriate and disburse monies obtained in that matter. Second, only the common council is *competent* and has the *capacity* to settle any claim or cause of action against the city. In short, state law gives no authority to a city attorney to settle claims or lawsuits against the city, or to disburse city funds in settlement of claims or lawsuits. Because no such authority was vested in

the city attorney involved here, and because the city council did not adopt the resolution accepting the city attorney's *recommendation of acceptance* of Kocinski's settlement offer *before* she revoked it, the trial court erred in holding that there was a binding settlement, and that Kocinski was therefore bound by its terms.

The express concession of the city attorney that he has no authority to bind the city is the basis for the city attorney's argument that the stipulation must, therefore, be construed as an irrevocable option contract. He reasons that, because the city attorney does not have the authority to bind the city, the "agreement" should be construed as one that binds the offeror to hold the offer open irrevocably and gives the city the option to accept the offer. The city attorney claims he has the authority to enter into option contracts of this kind; however, this "agreement" simply is not an option contract.

*Bratt v. Peterson,* 31 Wis. 2d 447, 451, 143 N.W. 2d 538 (1966), discusses a typical option contract. The nature of the contract as one of option should be made clear, the obligation of the offeror to hold the offer open for a specific period of time should be set forth, and the consideration for the option should be expressed with certainty.[7] It is the usual provision that consideration for extending an irrevocable option may be retained by the offeror even though the option is not exercised. None of these characteristics are even alluded to in the exchange of correspondence that the city attorney now claims to be an option contract.

[7]*Bratt v. Peterson,* 31 Wis. 2d at 452, indicates that, where other elements of an option contract are present, consideration for the option can be shown aliunde.

70

The principal support for the city attorney's position is one of public policy and necessity—that this court must find that offers like the plaintiff's are irrevocable or the city attorney could never, with any certainty, assure the common council that a settlement would in fact be reached at the offered figure. He asserts that option contracts are appropriate to avoid the problem posed here. The city attorney may well be right as a matter of policy in administering the city attorney's office, but we decline to find the "agreement" here to be an option contract, when there is not the slightest evidence that any of the parties intended to enter into one and when none of the indicia of an option contract are evident. If such policy is appropriate, it behooves city attorneys to make clear their intent to enter into an option contract at the time it is negotiated.

Thus, the resolution of this case is controlled by contract law.

Only the Common Council was authorized to accept the plaintiff's offer to settle her lawsuit. The facts are undisputed that Kocinski revoked her offer prior to its acceptance by the Common Council. An offer can be revoked by a communication to the offeree that the offeror no longer intends to enter into the proposed contract. *Williston on Contracts,* sec. 55, pp. 176–77 (3rd ed. 1957); and *Corbin on Contracts,* sec. 38, p. 61 (one volume ed. 1952). Here the revocation of the offer was communicated in a timely fashion. The offer was not a part of an irrevocable option. Accordingly, Kocinski had every right to withdraw from the proposed agreement prior to its acceptance by the Common Council. No contract ever sprang into existence. The litigation now stands in the same posture as it did prior to April 13,

1987, and is remanded for trial or for other proceedings as may prove to be appropriate.

This opinion has discussed at length the alleged agreement between the city and the plaintiff to the neglect of the arguments asserted by the individual defendant and his insurance company, who were also parties to the proposed settlement. Obviously, the legal determination that pertains to the rights and obligations of the city of Milwaukee are not applicable to these nonmunicipal defendants. We conclude, however, from the clear language of the settlement offer, that the other defendants' responsibility to satisfy the plaintiff's claim was inextricably interwoven with the overall offer of the plaintiff and the larger portion of the settlement amount to be paid by the city. Because the entire proposed settlement collapsed as the result of the withdrawal of Kocinski's offer, the other defendants stand in the same position as they did prior to April 13, 1987—defendants in a pending lawsuit.

*By the Court.*—Decision modified and, as modified, affirmed; cause remanded to the circuit court for trial.[8]

SHIRLEY S. ABRAHAMSON, J. (concurring). I write to remind attorneys to take care in relying on

---

[8]As pointed out in footnote 1, the court of appeals, while agreeing with a portion of the circuit court's rationale, reversed the circuit court when it remanded for factfinding. Because we also remand, but for the purpose of trial, our mandate is consistent with the mandate that would have been appropriate for the court of appeals. Hence, although we disagree with the court of appeals' reason for reversal, we agree with the mandate and, accordingly, affirm; but we modify the purpose of remand to be for trial, rather than for additional factfinding in respect to the intent of the parties.

language in opinions of the court of appeals when this court has affirmed, reversed, or modified the decision of the court of appeals and failed to comment on the court of appeals language. This court has never decided the effect of a court of appeals opinion when this court affirms, reverses, or modifies the decision of the court of appeals.

In this case the majority opinion of the court of appeals stated:

> The Supreme Court has indicated that although settlement agreements under the aegis of Rule 807.05, Stats., 'have occasionally been referred to as contracts, they are not governed by contract law' and may be set aside, in the court's discretion, for any of the reasons specified in Rule 806.07(1), Stats. *Burmeister v. Vondracheck,* 86 Wis. 2d 650, 664, 273 N.W. 2d 242, 248 (1979). Apart from the ameliorating provisions of Rule 806.07, however, certain stipulations under Rule 807.05 'are entitled to all the sanctity of an ordinary contract.' Thayer v. Federal Life Ins. Co., 217 Wis. 282, 285, 258 N.W. 849, 850 (1935). Principles of contract law may thus illumine our inquiry. 147 Wis. 2d at 737.

Because this language in the court of appeals' opinion might survive the court's modification of the court of appeals' decision, the court's opinion attempts to clarify this language and the *Burmeister* case. The court opinion states that the *Burmeister* court "goes too far to say that contract law is inapplicable to all agreements reached under sec. 807.05, Stats.," majority op. p. 67, and is "incorrect to say that sec. 807.05 operates to make enforceable as a contract a putative agreement that is not a contract, just because the formalities of that statute have been observed," majority op. p. 67.

Mrs. Kocinski's pro se brief refers to *Burmeister.* The briefs in this court of counsel for the other parties do not discuss the *Burmeister* case. While I have doubts about the need for this court's "clarification," I join in the opinion.