Mark C. LASKA and Katherine E. Laska,
Plaintiffs-Respondents,†

v.

Mary Jane LASKA, Defendant-Appellant.

Court of Appeals

*No. 02–0022–FT. Submitted on briefs March 21, 2002.—Decided
April 30, 2002.*

2002 WI App 132

(Also reported in 646 N.W.2d 393.)

† Petition to review denied 7-26-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rodney J. Mason* of Chandler & Mason, Ltd. of St. Paul, MN.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *R. Michael Waterman* of *Mudge, Porter, Lundeen & Seguin, S.C.* of Hudson, and *Zelle, Hofmann, Voelbel, Mason & Gette LLP* of Minneapolis, MN.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Mary Jane Laska appeals an order enforcing a mediation agreement.[1] She argues that the trial court misinterpreted Wis. Stat. § 807.05 when it enforced the agreement absent her signature. We agree and reverse the order.

---

[1] This is an expedited appeal under Wis. Stat. Rule 809.17. All statutory references will be to the 1999-2000 version.

## BACKGROUND

¶ 2. Mark Laska and Katherine Laska are the adult grandchildren of Richard Laska, Sr., who died on October 5, 1998. Mary Jane was married to Richard from May 15, 1990, to the date of his death.

¶ 3. Mark and Katherine brought this action alleging that Mary Jane had wrongfully interfered with their anticipated inheritance from Richard's estate. The trial court's February 28, 2001, scheduling order set May 14, 2001, for a jury trial. During a May 4 mediation proceeding, the parties reached an agreement that was reduced to a mediator's memorandum. This memorandum was not signed by any of the parties or their attorneys as it was anticipated that they would later sign a settlement agreement. In a letter dated May 7, the mediator stated:

> I am writing to confirm the settlement that was reached at the time of the mediation session . . . . It was agreed that [Mary Jane] will pay to [Mark and Katherine] the sum of $135,000.00. In addition [Mary Jane] will abandon, relinquish, release or otherwise give up any interest she may have in the revocable trust. In other words she will not receive any further payments from that trust. It was agreed that [Mary Jane] will make no claim against the will or the estate or any other type of claim against [Mark and Katherine]. The parties will execute mutual releases. If I have left anything out or misstated anything please let me know.

¶ 4. The same day, Mark and Katherine's attorney faxed and mailed a similar memorandum of agreement to Mary Jane's attorney. On May 9, Mark and Katherine's attorney mailed a draft of the settlement agreement to Mary Jane's attorney. Also on May 9, Mary Jane's attorney sent a letter to the court,

stating: "The parties have agreed to settle this case. Therefore, the trial which was scheduled for the week of May 14, 2001 may be canceled. Someone will send you a Stipulation and Order of Dismissal when the settlement has been completed." On May 14, Mark and Katherine's attorney mailed a "Disclaimer of Interest in the Revocable Trust of Richard Laska" to Mary Jane's attorney for her signature. Mary Jane did not sign any of these documents.

¶ 5. On June 13, Mary Jane's attorney advised the court that Mary Jane refused to sign the settlement agreement and disclaimer and that a new scheduling order and trial date were needed. In response, Mark and Katherine filed a motion to enforce the settlement agreement.

¶ 6. The trial court determined that the parties had entered into a stipulation pursuant to Wis. Stat. § 807.05 and that it was "subscribed" by their conduct. The trial court observed that public policy favors mediation of disputes and that the trial court has inherent authority to control its calendar. Because the court had removed the trial date from its calendar without objection after being advised of the settlement, it ordered that the mediation agreement was to be enforced.

## DISCUSSION

■■■■

¶ 7. Mary Jane argues that the trial court misinterpreted the meaning of the term "subscribed" provided in Wis. Stat. § 807.05. We agree. This issue is resolved by resort to statutory language, an issue of law we decide de novo. *State v. Setagord*, 211 Wis. 2d 397, 405–06, 565 N.W.2d 506 (1997). The purpose of statu-

tory interpretation is to ascertain and give effect to the legislature's intent. *Id.* at 406. We first look to the language of the statute itself. *Id.* If the meaning of the statute is clear on its face, we apply it as written. *Id.*

¶ 8. WISCONSIN STAT. § 807.05 reads:

> No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court or during a proceeding conducted under s. 807.13 or 967.08 and entered in the minutes or recorded by the reporter, *or made in writing and subscribed by the party to be bound thereby or the party's attorney.* (Emphasis added.)

¶ 9. WISCONSIN STAT. § 807.05 is an exception to the usual rule that oral contracts are binding. *Adelmeyer v. WEPCO*, 135 Wis. 2d 367, 400 N.W.2d 473 (Ct. App. 1986). It "seeks to prevent disputes and uncertainties as to what was agreed upon." *Id.* at 372 (citation omitted). The statute adds requirements for enforceability of an otherwise valid oral agreement when the agreement is reached in the course of a claim that is in the process of adjudication. *Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 67, 452 N.W.2d 360 (1990). "An oral contract reached by stipulation in the course of court proceedings is unenforceable unless formalized in the way required by sec. 807.05." *Id.* at 67–68.

¶ 10. The requirement that a name be "subscribed" is to be distinguished from the requirement that there be a personal handwritten "signature." *Id.* at 68. A rubber-stamped signature of a parties' attorney "satisfied the requirement that the writing under sec. 807.05, Stats., must be 'subscribed' by the party" or the party's attorney. *Id.* at 64.

■

¶ 11. Mark and Katherine maintain that the trial court correctly determined that "subscribed" should be given an expansive meaning. They contend that because *Kocinski* does not require a handwritten signature, a party may "subscribe" to an agreement by his or her conduct. They also claim that Mary Jane's request to have the trial date cancelled and her lack of response to opposing counsel's correspondence and memorandum detailing the mediation agreement expressed her approval of the terms of the settlement. They note that one of the dictionary definitions of "subscribe" is to express concurrence or approval.[2] We are unpersuaded.

¶ 12. We are satisfied that the plain meaning of the term "subscribe" requires that a party's assent or approval be formalized in some way on the document itself. *Kocinski*, 154 Wis. 2d at 67–68 ("An oral contract reached by stipulation in the course of court proceedings is unenforceable unless 'formalized' in the way required by sec. § 807.05."). Although the signature need not be handwritten, the term "subscribed" cannot be read to dispense altogether with a written indication of assent. To give such an expansive meaning to the term would frustrate the purpose of the statute, which is to give certainty to what was agreed upon.

¶ 13. Mark and Katherine also contend that the court has the inherent power to control its own docket,

---

[2] *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 2278 (unabr. 1993), which provides in part:

**1 :** to write (as one's name) underneath ; sign (one's name) to a document **2 a :** to sign with one's own hand : give consent to or bind oneself to the terms of (something written) by appending one's name **b :** to attest by appending one's name . . . **c** *obs* **:** to sign away **:** RESIGN, YIELD **d** (1) **:** to promise to give . . . (2) **:** CONTRIBUTE . . . **3** *chiefly Brit* **:** to give support to or concur in **:** FAVOR, SANCTION . . . .

citing *City of Sun Prairie v. Davis*, 226 Wis. 2d 738, 595 N.W.2d 635 (1999), and when a court is advised that a case has been settled, it should be able to remove the case from its calendar. They argue that Wis. Stat. § 807.05 cannot have been intended to permit one party to unilaterally control the court's calendar by asking to have a trial date removed from the court's calendar and then repudiating a settlement agreement.

¶ 14. Despite the court's understandable frustration, we conclude that an expansive reading of Wis. Stat. § 807.05 is not required. The court can prevent parties from manipulating its calendar by requiring their agreement to be formalized under § 807.05 before canceling a scheduled trial date. We recognize that public policy encourages settlement of disputes through mediation but, at the same time, legislative policy choices as statutorily expressed must stand. *See Davis*, 226 Wis. 2d at 755 ("It is for the legislature to make policy choices, ours to judge them based not on our preference but on legal principles and constitutional authority."). Because § 807.05 does not provide for a party to "subscribe" to an agreement through general conduct, Mary Jane is not bound by the mediation agreement.

*By the Court.*—Order reversed and cause remanded for further proceedings.