# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2018AP1321 |

†Petition for Review filed

Complete Title of Case:

**PAUL R. PONFIL TRUST,**

  **PLAINTIFF-RESPONDENT,†**

 **V.**

 **CHARMOLI HOLDINGS, LLC,**

  **DEFENDANT-APPELLANT,**

 **ABC COMPANY,**

  **DEFENDANT.**

| | |
|---|---|
| Opinion Filed: | September 18, 2019 |
| Submitted on Briefs: | June 4, 2019 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Gundrum, J. |
| Concurred: | |
| Dissented: | Reilly, P.J. |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick G. McBride* of *O'Neil, Cannon, Hollman, DeJong & Laing S.C.*, Milwaukee and *Robert A. Carroll* of *Carroll Law Office, S.C.*, Cedarburg. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jacques C. Condon*, Thiensville. |

COURT OF APPEALS
DECISION
DATED AND FILED

September 18, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1321**

STATE OF WISCONSIN

Cir. Ct. No. 2016CV429

IN COURT OF APPEALS

PAUL R. PONFIL TRUST,

    PLAINTIFF-RESPONDENT,

 V.

CHARMOLI HOLDINGS, LLC,

    DEFENDANT-APPELLANT,

ABC COMPANY,

    DEFENDANT.

APPEAL from an order of the circuit court for Ozaukee County: SANDY A. WILLIAMS, Judge. *Reversed and cause remanded for further proceedings.*

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶1    NEUBAUER, C.J. This case addresses the enforceability of a purported settlement agreement entered into by the parties at the end of mediation, in which the parties agreed to sign a separate "substantive agreement" that would address "such things" as liability and indemnity in "usual form." The circuit court found that the agreement was binding, while acknowledging that the additional terms remained to be agreed upon. The settlement agreement is unenforceable as it lacks agreement on material terms. We reverse and remand.

## BACKGROUND

¶2    Charmoli Holdings, LLC (Charmoli), and the Paul R. Ponfil Trust (the Trust) jointly own property with a quarry, which an affiliated entity previously operated, in Cedarburg, Wisconsin. The Trust filed this action in November 2016. During a mediation session on February 6, 2018, the parties prepared and signed a handwritten one-page document captioned "Mediation Settlement Agreement" (the Agreement).

¶3    The opening line of the Agreement states: "This Case Is Settled In Full As Follows:" The parties then set forth five paragraphs of terms, including (1) Charmoli's payment of $500,000 to the Trust within thirty days, (2) the Trust's quitclaim of its interest in one forty-acre parcel to Charmoli, (3) Charmoli's quitclaim in another forty-acre parcel to the Trust, and (4) dismissal of the lawsuit upon the payment and conveyances. In the fifth paragraph (Paragraph 5) the parties "agree[d] to sign a separate substantive agreement covering such things as liability & indemnity in usual form."

¶4 The Trust provided a first draft of an agreement to address Paragraph 5. The draft provided as follows:

> This Agreement is intended to incorporate the Mediation Agreement, identify the terms of resolution, and to allow for the resolution and satisfaction of any and all claims between them and do so to the extent such claims were asserted within or outside the Lawsuit, as described below, subject to the rights and obligations that survive this agreement.

¶5 The Trust's draft agreement provided a lengthy and involved indemnity/hold harmless provision, which noted that the property at issue is "the subject of operations that include but are not limited to the deposit of materials from outside sources, with such deposits commonly referred to as fill," which activities have been taking place "for an extended time period" and "are expected to continue in the future." The draft addressed the scope as to persons and entities, past and future activities, claims related to the fill materials, and detailed the scope of the indemnity and hold harmless agreement. It addressed a mutual release. The draft addressed affiliated entities, including R&R Excavating and Bulldozing and the R&R Liquidating Trust. The draft also included an integration clause, proposing to supersede all prior agreements, including the Agreement.

¶6 Charmoli responded with its own version. Charmoli revised the scope and substance of the indemnity, with an environmental indemnity clause, hold harmless provision, financial limitations as to indemnity, aggregate liability, claims procedures, a cooperation clause, and the control and defense of indemnity claims. The scope of the environmental issues was addressed with multiple definitions, such as definitions of "Clean-up," "Contaminants," "Environmental Laws," "Low Hazard Exemption," "Regulatory Actions," as were the scope of "Indemnitees," "Indemnitors," and "Third Party Claims."

¶7    The Trust responded with another draft, which now provided that the "Mediation Agreement and this Agreement represent the entire agreement between the Parties."

¶8    Ultimately, despite many communications between the parties, no agreement was reached on "such things as liability & indemnity in usual form."

¶9    The Trust filed a motion seeking to compel enforcement of the Agreement under WIS. STAT. § 807.05 (2017-18).[1]  The Trust asked the circuit court to draft a release and indemnification in "usual form," requesting the court to "adopt the construction which will result in a reasonable, fair and just contract as opposed to one that is unusual and extraordinary."

¶10    Ultimately, the Trust changed its position, clarifying that it was not asking "the [circuit] court to be a scrivener or rewrite the settlement."  Instead, the Trust stated that the scope of "liability & indemnity in usual form" "can be addressed and enforced in the future, if an issue [arises]," but could not hold up enforcement now.

¶11    The circuit court granted the Trust's enforcement motion, finding that the parties entered into a binding agreement and concluding that the case has been settled in full.  However, the court declined to identify the terms of Paragraph 5 that were to be agreed upon, stating that it would be advisable for the parties to return to mediation to work out the terms.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶12    Charmoli appeals.

## DISCUSSSION

I.    Standard of Review

¶13    Whether a settlement agreement is binding and enforceable is a question of law we review de novo. ***Waite v. Easton-White Creek Lions, Inc.***, 2006 WI App 19, ¶5, 289 Wis. 2d 100, 709 N.W.2d 88 (2005); *see also* ***American Nat'l Prop. & Cas. Co. v. Nersesian***, 2004 WI App 215, ¶¶14-22, 277 Wis. 2d 430, 689 N.W.2d 922 (independently reviewing whether parties entered into binding settlement agreement).

II.    The Incomplete Mediation Agreement Is Not an Enforceable Settlement Agreement Under WIS. STAT. § 807.05.

*General principles regarding settlement agreements.*

¶14    Settlement agreements entered into while litigation is pending are governed by WIS. STAT. § 807.05.  The statute provides in part:

> No agreement ... between the parties ... in respect to the proceedings in an action ... shall be binding unless ... made in writing and subscribed by the party to be bound thereby or the party's attorney.

¶15    As relevant here, WIS. STAT. § 807.05 does not modify basic contract law. ***Kocinski v. Home Ins. Co.***, 154 Wis. 2d 56, 68, 452 N.W.2d 360 (1990) (citing ***Logemann v. Logemann***, 245 Wis. 515, 517, 15 N.W.2d 800 (1944)).  Instead, when a party attempts to enforce a valid settlement agreement reached in the course of an action, it adds certain requirements described in the statute. ***Kocinski***, 154 Wis. 2d at 67.  The statute is an exception to the general rule that oral contracts are binding. ***Id.***

¶16    In construing a settlement agreement, we apply contract-construction principles. *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶13, 257 Wis. 2d 421, 651 N.W.2d 345. "Because a settlement agreement is a contract by nature, a valid settlement agreement requires an offer, an acceptance and consideration all resulting from" mutual assent. *American Nat'l*, 277 Wis. 2d 430, ¶16.

¶17    Here, the written Agreement was signed by the parties. The issue is whether there is an enforceable "agreement" under contract law given that the terms of Paragraph 5 remained to be agreed upon. There is not.

¶18    A contract must be definite and certain as to its material terms and requirements to be enforceable. *Ehlinger v. Hauser*, 2010 WI 54, ¶57, 325 Wis. 2d 287, 785 N.W.2d 328 (a contract must be definite as to the parties' basic commitments and obligations); *Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 178, 557 N.W.2d 67 (1996). Accordingly, vagueness or indefiniteness concerning a material term prevents the creation of an enforceable contract. *Management Comput.*, 206 Wis. 2d at 178; *Waite*, 289 Wis. 2d 100, ¶7 n.4 (an exchange of letters can constitute a binding settlement agreement under WIS. STAT. § 807.05, "provided all material terms are in writing and are clearly accepted in a writing subscribed by the party to be bound or that party's attorney").

¶19    Agreements to agree are unenforceable when there is no agreement as to material terms. *See Dunlop v. Laitsch*, 16 Wis. 2d 36, 42, 113 N.W.2d 551 (1962); *see also American Nat'l*, 277 Wis. 2d 430, ¶19 ("Where ... it is part of the understanding between the parties that preliminary writings are to be followed by a formal contract containing additional material provisions and signed by the

parties, no binding or completed contract will be found."); ***United States v. Orr Constr. Co.***, 560 F.2d 765, 769 (7th Cir. 1977) (it must be possible to determine the terms of an agreement to agree independent of a party's mere wish, will or desire, either by virtue of the agreement itself or by commercial practice or other usage or custom).

> *There was no mutual assent on the terms of the settlement agreement regarding liability and indemnity.*

¶20    Here, the parties agreed to sign a "separate substantive agreement" covering the terms of Paragraph 5. Both the circuit court and the Trust recognize that the terms regarding liability and indemnity are (1) material and (2) remain to be worked out.

¶21    The parties themselves identified, with a five-paragraph agreement, these terms as material. The willingness to settle the lawsuit, to transfer property, and to pay a substantial amount of money are also undoubtedly impacted by the scope of liability and indemnity, as the parties' inclusion of these terms underscores. The Trust does not argue that the terms of the "separate substantive agreement" are immaterial or that these terms should be disregarded. It is undisputed that liability and indemnity associated with the transfer of this property involving a quarry operation are material terms. *See **Orr Constr. Co.***, 560 F.2d at 769 (despite the parties' intent that the settlement was complete and binding, the court determined it to be too indefinite to enforce, as the parties never reached a meeting of the minds on the phrase "proper legal releases"); ***Clark v. Mitchell***, 937 F. Supp. 110, 112-13 (D.N.H. 1996) (parties to a lawsuit could not reach agreement on indemnity and liquidated damages provisions; "where acceptance is conditioned upon additional material terms that were not offered, there is no meeting of the minds and thus, there is no contract"); ***Lawrence v. Hutchinson***,

204 P.3d 532, 540 (Idaho Ct. App. 2009) (indemnity was a material term in agreement to settle legal malpractice suit, such that agreement on monetary figure only was not an enforceable contract); *Collins v. Mike's Trucking Co.*, 934 So. 2d 827, 833 (La. Ct. App. 2006) (although significant parts of a settlement agreement were reached, disputes remained on indemnity issues, precluding a final, enforceable agreement).

¶22    To be enforceable, the material terms of the settlement must be addressed with a reasonable degree of certainty and definiteness.  Here, the parties agreed that a separate substantive agreement would address liability and indemnity.  That never happened.  The exchange of drafts between the parties reveal fairly complex issues with varying perspectives, making it clear that the parties have work ahead of them on their respective liabilities and indemnities associated with the transfer of property involving multiple entities and past and future quarry operations.  Notably, the Trust does not argue that the subsequent negotiations to enter the additional "substantive agreement" indicate that there was agreement on the scope of liability or indemnity.

¶23    On appeal, the Trust does not suggest what the terms should be. Instead, the Trust simply repeats its position that the settlement agreement should be enforced even in the absence of the additional "substantive agreement," because the case was "Settled In Full."  The Trust continues to assert that, to the extent there is a future disagreement over the terms of Paragraph 5, it is an issue for another day.  The Trust provides no authority to enforce a settlement agreement with recognized indefinite terms.

¶24    No showing has been made that there is a "usual form" when it comes to the terms.  The Trust does not contend that there is any past practice or

course of dealing, or any standard practice when the transfer of property is involved. It does not rely on the parties' conduct or anything outside the document itself to indicate what the parties intended in terms of the scope of the liability and indemnity provisions. To the extent there is a future dispute involving the property, such as a claim involving past fill activities at the quarry, a reviewing court would have no guidance as to how to enforce Paragraph 5. The Trust does not even pretend to suggest how that would work.

¶25     In sum, these material terms are not sufficiently definite; there is no objective basis upon which to determine what the terms might be. We have no authority to eliminate Paragraph 5, rewrite its terms, or kick the can down the road by enforcing an agreement with indefinite material terms.

¶26     The Agreement's opening statement that the case is "Settled In Full" does nothing to fill in the missing terms of Paragraph 5's agreement to agree. The Trust also argues that simply because Paragraph 5 was not completed does not render the agreement unenforceable, no more than the parties' failure to make the payment and conveyances. The analogy is inapt. The terms related to payment and conveyances are not satisfied because there is not an enforceable contract. If there were, the failure to comply would be a breach because these terms were agreed upon and are sufficiently definite to be enforceable.

## CONCLUSION

¶27     WISCONSIN STAT. § 807.05 requires a written agreement signed by the parties. Here, the terms of Paragraph 5, including liability and indemnity associated with the transfer of property, were to be agreed upon with a separate substantive agreement. These terms were never agreed to in writing, rendering

this provision incapable of enforcement for lack of definiteness. We reverse and remand for further proceedings consistent with this opinion.[2]

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[2] Without addressing or even acknowledging that Paragraph 5 provides that the parties "[a]greed to sign a separate substantive agreement covering such things as liability and indemnity in usual form," the Dissent concludes that this term is immaterial. In doing so, the Dissent incorrectly states that the reference in Paragraph 5 to "usual form" simply relates to the "executory details" involving the first three paragraphs, the "paperwork" to effect the payment and transfers of property. Dissent, ¶¶30, 31. That is not what Paragraph 5 says. As discussed above, no one has suggested that liability and indemnity are not material, much less that there is a "usual form" for these terms here. No one contends that "usual form" refers to the documents effecting payment and transfer of property, and not, as clearly written by the parties, to terms addressing liability and indemnity.

¶28    REILLY, P.J. (*dissenting*).   The express bargain made by these sophisticated parties was set forth in a concise, clear one-page handwritten agreement, the purpose of which was to dismiss "THIS CASE":

¶29   The majority buys into Charmoli's change of heart (via parole evidence) and determines that this unambiguous contract is "unenforceable as it lacks agreement on material terms." Majority, ¶1. As our supreme court noted in **Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.**, 206 Wis. 2d 158, 181, 557 N.W.2d 67 (1996), "if a disagreement between parties as to their intent could support a claim of indefiniteness … nearly every contract challenged in court would be void for indefiniteness." As all material terms to dismiss "THIS CASE" were agreed upon by the Trust and Charmoli, I dissent.

¶30   Some of the best lawyers in the state, along with their clients and one of the best mediators in the state, crafted this contract in which they all agreed that Charmoli would pay $500,000 within thirty days and would convey its interest in the Stephenson property to the Trust, and the Trust in turn would give its interest in the Cedarburg property to Charmoli. The Trust and Charmoli accepted the ramifications of the transference of the real estate parcels between themselves and agreed that, to equalize the bargain, Charmoli would pay $500,000 to boot. The Trust and Charmoli (and their lawyers) agreed that the paperwork to effectuate the transfers would be done "in usual form." The fourth paragraph promised that "upon above payment and conveyances," the "lawsuit will be dismissed on its merits." That was the bargain made by the parties.

¶31   Paragraph 5 is not a material term of the contract. Paragraph 5 is a clean-up paragraph meant to handle the executory details "in usual form." The majority takes this nonmaterial term and, utilizing parole evidence, magically declares it a material term. Majority, ¶¶21-22. The only material terms were the transfers of the two parcels and payment of $500,000 by Charmoli. The fact that Charmoli had a change of heart as to whether $500,000 is a fair price for its bargain, as inferred from the March 5, 2018 e-mail correspondence between

counsel, is not a reason for us to undo an unambiguous contract. "In usual form" clearly expresses that Paragraph 5 was not material to the bargain made and did not defeat the parties' express agreement that "THIS CASE IS SETTLED IN FULL." I respectfully dissent.