# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1440**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV867

IN COURT OF APPEALS
DISTRICT I

RICHARD A. MUELLER AND JOSEPH L. FORD, III,

PLAINTIFFS-RESPONDENTS,

V.

TL90108, LLC,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: KEVIN E. MARTENS, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1     PER CURIAM.   TL90108, LLC ("TL") appeals from a circuit court order refusing to enforce a settlement agreement with Richard A. Mueller and Joseph L. Ford, III.[1]   We conclude that the circuit court properly refused to enforce the settlement agreement, and affirm.[2]

## BACKGROUND

¶2     This case involves a long and contentious dispute over the ownership of a rare and expensive automobile.  In short, in 2001, a late 1930's Talbot Lago car disappeared from a Milwaukee business.  Subsequently, in 2015, TL purchased a Talbot Lago from an international automobile broker.  When TL tried to obtain a title in Illinois, this triggered an alert on a stolen vehicle report.  Mueller and Ford, who claim to be the rightful owners of the car, sued TL for replevin and a declaration of ownership.[3]

¶3     TL filed a motion to dismiss, which the circuit court granted.  This court reversed, and our supreme court affirmed with modifications, and remanded for further proceedings.  *Mueller v. TL90108, LLC*, 2018 WI App 52, ¶3, 383

---

[1] TL filed a petition for leave to appeal from a nonfinal order of the circuit court, which we granted.  *See* WIS. STAT. RULE § 809.50(3) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] By prior orders we allowed the parties to submit briefs and appendices under seal.  The sealed documents are hereby deemed unsealed only to the extent that they are quoted, referenced, or described in this opinion.  We also note that TL's statement on oral argument and publication requests that this opinion be sealed.  TL does not cite any authority for this request.  We do not address arguments that are undeveloped or unsupported by legal citations.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

[3] Mueller and Ford allege that the car TL purchased had been stolen from Roy Leiske.  Leiske passed away leaving Mueller the sole heir.  Mueller subsequently sold part of his interest in the car to Ford.

Wis. 2d 740, 917 N.W.2d 551, *aff'd as modified*, 2020 WI 7, ¶26, 390 Wis. 2d 34, 938 N.W.2d 566.

¶4     Relevant to this appeal, on remand, a full-day mediation took place on October 29, 2021, with former Magistrate Judge David E. Jones. At the conclusion of the mediation, the parties signed a two-page Settlement-in-Principal Term Sheet ("SIP"), which included a "Financial Terms" section and a "Releases and Dismissal of Claims" section. In the "Releases and Dismissal of Claims" section, the SIP included the following bullet points:

- The parties will negotiate and agree to the terms of a final settlement agreement in good faith.

- The mediator will resolve any disputes involving the final settlement agreement.

- The terms of the final settlement agreement will include mutual confidentiality and non-disparagement provisions.

- The only public statements that Ford and Mueller on the one hand and TL on the other hand will make in respect to their settlement are the following: "We amicably resolved our dispute."

- The parties agree that this Term Sheet contains all material terms and is fully enforceable under [WIS. STAT. §] 807.05.

Subsequently, Ford's counsel filed a letter advising the court that the parties agreed to settle the lawsuit.

¶5     In the weeks that followed, the parties exchanged drafts of various settlement documents and participated in two additional mediation sessions. After the second additional mediation session, Judge Jones asked the parties to submit their proposed versions of the final settlement agreement and provide comments on each other's proposed documents.

¶6 In May 2022, Judge Jones attempted to resolve the parties' competing documents and gave the parties additional direction. On June 1, 2022, Judge Jones provided the parties with his completed work on the settlement agreement and related documents.

¶7 On June 7, 2022, Mueller and Ford advised TL that they would not sign the final settlement documents. TL moved to enforce the settlement on two grounds: (1) the SIP, standing alone, was fully enforceable; and (2) that Judge Jones had the power to prepare the final settlement documents and the documents he prepared were binding and enforceable. Mueller and Ford cross-moved to declare the SIP unenforceable and invalidate the settlement documents.

¶8 After briefing and argument, on July 29, 2022, the circuit court issued an oral ruling denying enforcement of the SIP. The circuit court found that the parties intended the SIP to be a binding and enforceable settlement agreement. The circuit court, however, found that the agreement was not in fact enforceable because two material terms in the SIP—confidentiality and non-disparagement— were indefinite. In its ruling, the circuit court explained that the case was not "routine" or "run of the mill," had a "tortured history," and required more nuance than a typical case. In addition, the circuit court found that Judge Jones lacked authority to issue the settlement documents because the SIP gave him authority only to resolve disputes with respect to the final settlement agreement, not any disputes regarding the SIP or otherwise predating a final agreement. This appeal follows.

## DISCUSSION

¶9 On appeal, TL contends that the "confidentiality" and "non-disparagement" terms were "sufficiently definite" and the SIP was enforceable. In

4

addition, TL contends Judge Jones properly resolved the parties' disputes and this court should direct the parties to sign the documents he prepared.

¶10     In construing a settlement agreement, this court applies contract-construction principles. ***Paul R. Ponfil Tr. v. Charmoli Holdings, LLC***, 2019 WI App 56, ¶16, 389 Wis. 2d 88, 935 N.W.2d 308. To be enforceable, a contract "must be definite and certain as to its material terms and requirements[.]" ***Id.***, ¶18. Thus, "vagueness or indefiniteness concerning a material term prevents the creation of an enforceable contract."[4] ***Id.*** Whether a settlement agreement is binding and enforceable is a question of law we decide *de novo*. ***Waite v. Easton-White Creek Lions, Inc.***, 2006 WI App 19, ¶5, 289 Wis. 2d 100, 709 N.W.2d 88.

¶11     In this case, the SIP states that the parties agreed to include "mutual confidentiality and non-disparagement provisions" in their final agreement. We agree with the circuit court that these terms were indefinite, and as a result, the SIP was not enforceable.

¶12     To start, the reference to "non-disparagement" is indefinite because it does not provide any parameters for determining the scope or duration of its application. There is no definition of who or what cannot be disparaged. For example, it is not clear whether disparagement is limited to the parties or their business interests.

¶13     Likewise, the reference to "confidentiality" is also indefinite. As Mueller and Ford contend, the confidentiality provision does not specify whether

---

[4] "An indefinite term is one that is not susceptible to any reasonable construction, even after considering the surrounding circumstances." ***Vohs v. Donovan***, 2009 WI App 181, ¶15, 322 Wis. 2d 721, 777 N.W.2d 915.

confidentiality was limited to the settlement or covered information beyond the settlement. Moreover, there is no guidance regarding the duration of confidentiality.

¶14 TL argues that the confidentiality provision is clarified by the statement in the SIP that "[t]he only public statements" that Ford, Mueller, and TL will make in respect to their settlement is "[w]e amicably resolved our dispute." This statement, however, only governs statements to the public, not non-public disclosures.

¶15 TL also points to other documents outside of the SIP to define confidentiality. If the SIP, however, had contemplated other documents to define confidentiality, it would have specifically referenced or identified those documents. Additionally, the need to consider other documents underscores that the meaning of confidentiality is not clear from the SIP alone.

¶16 As the circuit court found, this case is similar to ***Ponfil Trust***. ***Id.***, 389 Wis. 2d 88, ¶1. In ***Ponfil Trust***, during a mediation session, the parties prepared and signed a one-page document captioned "Mediation Settlement Agreement." ***Id.***, ¶2. The document included a paragraph stating that the parties "agree[d] to sign a separate substantive agreement covering such things as liability & indemnity in usual form." ***Id.***, ¶3 (brackets in original). Subsequently, the parties were unable to reach an agreement on "such things as liability & indemnity in usual form." ***Id.***, ¶8. The plaintiff filed a motion seeking to compel enforcement of the mediation agreement. ***Id.***, ¶9. The circuit court granted the motion to enforce finding that the parties had entered into a binding agreement and the case had been settled in full, but advised the parties to return to mediation to work out the missing terms. ***Id.***, ¶11.

¶17    On appeal, this court reversed, holding that there was not an enforceable agreement because the "liability" and "indemnity" terms were indefinite. *Id.*, ¶¶20, 25. This court explained that:

> Here, the parties agreed that a separate substantive agreement would address liability and indemnity. That never happened. The exchange of drafts between the parties reveal fairly complex issues with varying perspectives, making it clear that the parties have work ahead of them on their respective liabilities and indemnities associated with the transfer of property involving multiple entities and past and future quarry operations.

*Id.*, ¶22.    As in *Ponfil Trust* where this court found there was no basis to determine the meaning of the liability and indemnity terms, here, there was no basis to determine the meaning of non-disparagement or confidentiality.[5]

¶18    Lastly, we address Judge Jones' mediation authority. Mueller and Ford contend that because the SIP was unenforceable for indefiniteness, "all of its terms became void and ineffectual" and there was "never any valid provision delegating authority to [Judge] Jones." *See Ehlinger v. Hauser*, 2008 WI App 123, ¶28, 313 Wis. 2d 718, 758 N.W.2d 476 ("[T]he indefiniteness of an essential term prevents the creation of an enforceable contract.").

¶19    TL argues that the SIP does not need to "be sufficiently definite to be independently enforceable because the [SIP] provides a mechanism (the mediator resolving any disputes involving the final settlement agreement) to reach

---

[5] Mueller and Ford also contend in the alternative that we should conclude that the "SIP is an unenforceable preliminary agreement." Because we conclude that the SIP was unenforceable due to the indefiniteness of the confidentiality and non-disparagement terms, we do not address this argument. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (stating that "cases should be decided on the narrowest possible ground").

a binding agreement." TL also argues that Judge Jones had "unfettered authority" to resolve any drafting disputes, not only disputes arising from an executed settlement agreement.

¶20 We disagree with TL. The SIP states that Judge Jones "will resolve any disputes involving the final settlement agreement." The SIP does not include any language authorizing Judge Jones to resolve disputes about the SIP or cure indefinite terms. Rather, as the circuit court found, the SIP only provides Judge Jones with authority to resolve disputes about the final settlement agreement itself, not disputes involving the creation or negotiation of the final settlement agreement. Thus, we are not persuaded that the mediator-delegation language renders the SIP enforceable or that Judge Jones had the authority to impose a final settlement agreement on the parties.

¶21 Therefore, for all of the reasons stated above, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.