D & D CARPENTRY, INC., Plaintiff-Respondent,

v.

U.S. BANCORP, f/k/a Firstar Bank Wisconsin,
f/k/a First Wisconsin National Bank of
Sheboygan, Trustee of the James Gary Edler
Trust, under agreement dated May 31, 1990,
Defendant,

Robin EDLER,
Defendant-Appellant.

Court of Appeals

*No. 2009AP1264. Submitted on briefs February 23, 2010.
—Decided August 18, 2010.*

2010 WI App 122

(Also reported in 792 N.W.2d 193.)

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. BROWN, C.J. We deem the controlling issue in this case to be whether an arbitration order, entered by the trial court after the attorneys consented to arbitration in open court, is valid when one of those attorneys allegedly entered into the agreement without his client's consent. Robin Edler, upon learning that her attorney submitted her case to binding arbitration less than a month before the scheduled jury trial, retained new counsel and filed a motion for reconsideration protesting the court's arbitration order. The general rule is that an attorney has no authority to settle his or her client's case without the client's knowledge or consent. This is because settlement, including arbitration, surrenders one of the client's substantive rights and may compromise the client's case. When a client believes that his or her attorney has done so, it is the client's burden to show that the attorney's actions were unauthorized. We conclude that the testimony at the motion for reconsideration produced prima facie evidence that she did not authorize her attorney to submit her case to binding arbitration. Because the trial court never made findings of fact regarding whether Edler authorized arbitration,

437

we reverse and remand with directions that the trial court determine whether she gave consent.

## BACKGROUND

¶ 2. In June 2003, Edler entered into a contract with D & D Carpentry, Inc. for the construction of a residence.[1] The contract included an arbitration addendum providing that the parties agreed to settle disputed matters by final and binding arbitration conducted by Construction Arbitration Services. In January 2007, D & D sued Edler claiming that she breached the contract by failing to pay nearly $127,000, plus interest, due under the contract. Neither D & D nor Edler invoked the arbitration addendum. Edler answered the complaint, demanded a twelve-person jury, and filed a counterclaim. In February 2009, following several delays, the jury trial was set for later that month. After the date was set, D & D requested that the court order arbitration by a different tribunal than that stated in the arbitration addendum of the contract.

¶ 3. The attorneys for D & D and Edler, without their clients present, then discussed this possibility. According to a stipulation in the record which sought to reprise the facts leading up to the agreement to arbitrate, Edler's attorney indicated that Edler would not object to D & D's request for arbitration based on D & D's willingness to consent to a mutually agreeable arbitrator, which would be a different mechanism than that provided for in the construction contract. Edler's attorney also stated that he received authorization from Edler to enter into the arbitration agreement. On Feb-

---

[1] Edler's husband, James Edler, also signed the contract. He died on January 31, 2005. We refer to Robin Edler and James Edler's estate collectively as Edler.

438

ruary 20, 2009, the attorneys conferenced off the record with the trial court, after which they both went into open court, on the record, and stated the terms of the arbitration agreement.[2] Edler's attorney stated: "If your Honor so orders arbitration on the other terms as laid out, we would certainly be there and would accept that as the ruling of the Court." The trial court agreed to the parties' terms, orally ordered arbitration with an arbitrator to be agreed upon by the parties' attorneys, and removed the jury trial from its calendar.

¶ 4. After arbitration was orally ordered by the trial court, and while the parties' attorneys were finalizing the arbitration terms so as to put the order in writing for the court's signature, and while they were busy setting the dates for arbitration, Edler retained new counsel and filed a motion for reconsideration of the

---

[2] Much of the discussion with the trial court leading up to the agreement to arbitrate was off the record. We have said this before in past opinions and say it again, we strongly discourage the practice of discussing essential matters off the record. The circuit court itself said:

> I must say there has been talk about my conversations during this. We haven't always been on the record, but I can tell you we have always been in open court. In civil matters, we are not always on the record. Maybe that is a lesson to be learned.

We agree. Off-the-record discussions often result in having to reconstruct what transpired. It invites speculation due to loss of memory and may well result in error. Certainly, this court may not and will not speculate. *See State v. Howell*, 2007 WI 75, ¶ 48, 301 Wis. 2d 350, 734 N.W.2d 48. Because the record was not made when it should have been, we are reduced, as was the trial court, to relying on the reconstruction of what occurred based on testimony of the attorneys and the trial court's recollection as to their understanding of what happened. This use of court time and resources could have been avoided if there had been an on-the-record discussion.

arbitration order. At the May 15, 2009 hearing on Edler's motion, Edler testified that she recalled her former attorney discussing how the contract, providing for arbitration by "Construction Arbitration Services," would be tantamount to having a "kangaroo court" decide the matter. She testified that this was the sole discussion regarding arbitration, that she did not at any time authorize arbitration, that she had no recollection of her former attorney ever discussing it with her before the court's February 20th order and that she was "shocked" to hear that the court had ordered arbitration.

¶ 5. At this same motion hearing, Edler's former counsel testified that he had numerous discussions about arbitration with Edler on the days leading up to the February 20th order, that he and Edler discussed the possibility of arbitration, and although he did state his concern about going to arbitration with an arbitrator listed in the construction contract, any testimony by Edler suggesting no real discussion about arbitration was inaccurate. But, interestingly, he admitted that Edler did not authorize him to agree to arbitration and told him she wanted a jury trial.

¶ 6. The trial court did not resolve the issue of whether Edler had authorized her former attorney to enter into an arbitration agreement. Instead, the trial court ruled that, because Edler's former attorney did not object to arbitration on the record at the February 20th hearing, Edler—by her attorney—had waived any right to contest the matter now. The trial court also stated its belief that arbitration remained the best and fairest option to resolve this case. Edler appeals.[3]

---

[3] This case comes to us on appeal from a nonfinal order. We granted leave to appeal and stayed arbitration pending this appeal in June 2009.

## DISCUSSION

¶ 7. Edler challenges the ruling that she waived the right to object to arbitration because her former attorney waived it in open court, on the record.[4] Certainly, the law is that, in a civil case, it is not required that a party must personally waive his or her right to a trial on the record. It is sufficient if the attorney waives it on the client's behalf. But that presupposes that the attorney has the authority to so act. The theme underlying Edler's argument is that her attorney was her agent and needed her consent to enter into the agreement, consent which he did not have.

■■■■

¶ 8. First, we note that, so far as settlements are concerned, the general rule is that an attorney has no authority to enter into a binding settlement agreement without his or her client's consent. *See Balzer v. Weisensel*, 258 Wis. 566, 568, 46 N.W.2d 763 (1951); *see also* SCR 20:1.2(a) (2007–08) ("A lawyer shall abide by a client's decision whether to settle a matter."). An agreement to arbitrate rather than use court resources is a settlement tool. *See Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 112, 253 N.W.2d 536 (1977). *See also Franke v. Franke*, 2004 WI 8, ¶ 28, 268 Wis. 2d 360, 415, 674 N.W.2d 832 (discussing how arbitration is a permissible settlement alternative in actions affecting the family); and *City of Madison v. Frank Lloyd Wright Found.*, 20 Wis. 2d 361, 383, 122 N.W.2d 409 (1963); and also RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 22 cmt. e (2000) (analogizing arbitration to settlement regarding decisions reserved for clients). There

---

[4] She also raises other issues but we find them to be irrelevant to the outcome of this appeal and we do not discuss them.

are a plethora of cases identifying an agreement to arbitrate as a form of settlement. Therefore, we are comfortable with saying that, just like settlement, no attorney has the authority to forego a jury trial in favor of arbitration without the client's consent. In both cases, the attorney-client relationship is one of agent to principal, and as an agent, the attorney must act in conformity with his or her authority and instructions and is responsible to the principal if he or she violates this duty. *State v. Divanovic*, 200 Wis. 2d 210, 224, 546 N.W.2d 501 (Ct. App. 1996).

█

¶ 9. *Balzer* is also instructive on another point. If a client believes that an attorney has acted without authority to settle a case, it is the client's burden to prove it. *Balzer*, 258 Wis. at 569. *Balzer* involved a written stipulation for settlement made after the case was called for trial. *Id.* at 566–67. The client's attorney signed a written settlement agreement that was executed in open court despite the client not being present in court or signing the agreement. *Id.* at 566, 568–69. The settlement agreement provided for the exchange of a small piece of land for $450. *Id.* at 567. After the signing of the agreement, the trial court dictated an order dismissing the claims on their merits. *Id.* The client objected to his attorney after the fact. *Id.* The trial court ordered the client to show why the settlement judgment should not be entered. *Id.* Although the order was served upon the client personally and the clients attorney, the client neither appeared in person nor filed any affidavit. *Id.* The trial court ruled, based on the record before it, that the client had clothed his attorney with apparent authority to settle the case. *See id.* at 569. The supreme court affirmed, stating that if a client believes his or her attorney did not have the

authority to settle the case which the client wished to litigate, then the client has the burden of demonstrating this to the trial court upon learning of such unauthorized act. *Id.*

¶ 10. *Balzer* is consistent with an earlier supreme court decision in favor of a client. In *Fosha v. O'Donnell*, 120 Wis. 336, 344, 97 N.W. 924 (1904), our supreme court held that the client presented sufficient evidence to satisfy her burden of demonstrating that her attorneys actions were unauthorized. There, the client learned that her attorney settled at the time she received payment pursuant to the settlement. *Id.* at 343. She then commenced another lawsuit challenging the validity of the settlement agreement. *Id.* The case went to a jury and the jury concluded that the client had not authorized her attorney to sign the stipulation of settlement and that she had no knowledge of the contents of the written stipulation when the payment was made. *Id.* at 343. On appeal, the supreme court held that the client's attorney had no authority under his retainer to bind his client in a settlement agreement and that the attorney could do so only when expressly authorized. *Id.* at 342. Since the client had not authorized her attorney to settle upon the terms in the agreement, the court vacated the settlement. *Id.* at 344–45.

¶ 11. What *Balzer* and *Fosha* teach us is that an attorney may not give up a client's right to a trial without consent of the client and that the client has the burden to prove that consent was not authorized.

■

¶ 12. Applying those two cases to the one at bar, Edler, after learning that the court ordered binding arbitration upon her attorney's consent, hired new counsel and filed a motion to reconsider based on her

original counsel's lack of authority. Edler testified that she did not know her attorney had agreed to arbitration and that she told her attorney she did not wish to arbitrate and instead wanted a jury trial. Edler's original counsel admitted at the motion hearing that Edler did not authorize him to enter into an arbitration agreement and that he knew Edler wanted a jury trial. Based on those facts, we conclude that Edler presented a prima facie case entitling her to have a fact finder decide whether she authorized her attorney to enter into the arbitration agreement.

¶ 13. An attorney may advise a client of the advantages and disadvantages of a proposed client decision and seek to dissuade the client from adhering to it. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 21 cmt. d. An attorney, however, may not do what Edler's original attorney did—continue a representation while refusing to follow a client's continued instruction. *See id.* In retaining an attorney to prosecute or defend an action, a client may hardly be presumed to have intended to vest the attorney with authority to remove the controversy from the courts into a forum of the attorney's own creation. Even if tactically, arbitration or settlement is wise, it is not the sort of tactical maneuver an attorney may make during pending litigation without the client's authorization.

¶ 14. We are confident that both the trial court and Edler's former attorney knew that this was, at least, a potential pitfall to arbitration. In reconstructing the record, the trial court made a finding that Edler's original attorney had said, just before going on the record with the agreement to arbitrate, something to this effect: "Judge, you know I have got to object for the record." The trial court also found that it replied to

counsel by saying, something to the effect, the following: "Sure." The trial court then made these specific findings:

> So, as to specific findings, I do find there was an agreement to arbitrate. The objection was pro forma; and again, I didn't explore it. I probably should have. But it was either to the American Arbitration Association or because of some possible client conflict, and maybe [Edler's former counsel] was covering himself. I don't know. Either way, that is the totality of the conversation.

¶ 15. Yes, the trial court should have explored it. The very fact that the attorney felt duty-bound to "object for the record" should have raised a red flag that, perhaps, the attorney did not have authority to enter into a settlement agreement calling for arbitration. There is no such thing as a "pro forma" objection. There is either an objection or there is no objection. As far as this court is concerned, the so-called agreement to arbitrate was made without deciding whether Edler consented to it.

¶ 16. Before leaving this case, we must comment on the trial court's determination that "arbitration remained the best [and] fairest option" to resolve this case "given its nature and the posture . . . right before the jury trial." It is not the province of the trial court to order arbitration based on what it opines is the best way to resolve a case. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Joint Sch. Dist. No. 10*, 78 Wis. 2d at 101 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *see also AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–52 (1986). So, to the

extent that the trial court ordered arbitration without deciding whether Edler agreed to submit the dispute to arbitration because it thought it best—the court was without authority to do so.

¶ 17. We reverse and remand with the following directions: Because Edler has produced a prima facie case that she did not authorize her attorney to enter into arbitration, she is entitled to have a fact finder make that determination. Since a record has already been made with regard to whether she gave consent, the parties may stipulate to have a trial court, on remand, make the findings of fact based on the record already made. We recognize, however, that a different judge may be presiding on remand and it may be that one or both of the parties would like to have that judge be able to observe the demeanor of the witnesses in making the credibility decisions. Therefore, we remand with directions that this issue be retried before the trial court unless the parties stipulate to allowing the trial court to make its decision based on the record already made.

*By the Court.*—Order reversed and cause remanded with directions.