COURT OF APPEALS
DECISION
DATED AND FILED

March 31, 2026

Samuel A. Christensen
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2421**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV3492

IN COURT OF APPEALS
DISTRICT I

---

ST. CLAIRE Q. LEE,

PLAINTIFF-APPELLANT,

TWIN CITY FIRE INSURANCE COMPANY AND ALLSTATE INDEMNITY COMPANY,

INVOLUNTARY-PLAINTIFFS,

V.

PROGRESSIVE UNIVERSAL INSURANCE COMPANY AND SUBHAJIT PAUL,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: J.D. WATTS, Judge. *Reversed and cause remanded for further proceedings.*

Before White, C.J., Colón, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM. St. Claire Q. Lee appeals from an order of the circuit court granting Progressive Universal Insurance Company's and Subhajit Paul's motion to enforce a settlement agreement. For the following reasons, we reverse the circuit court's order and remand the cause for further proceedings consistent with this opinion.

**BACKGROUND**

¶2   Lee was involved in a motor vehicle accident with Paul. Paul was insured by Progressive Universal Insurance Company (collectively, "Progressive"). Lee brought suit against Progressive, and after a jury trial in May of 2024, Lee was awarded $116,888.82. Following the verdict, counsel for Progressive, Attorney Ann C. Emmerich, emailed counsel for Lee, Attorney Todd R. Korb, and asked whether Attorney Korb thought the case could be resolved for the amount of the verdict by a release and stipulation rather than entry of judgment for the verdict amount and any statutorily allowed costs. After some discussion between the two of them over the amount Paul would pay and the various liens that had to be paid off, Attorney Emmerich stated via email, "I think we'll be able to take care of this through release and stip and order for verdict plus the costs." Attorney Korb responded, "Wonderful."

¶3   As relevant to this appeal, on May 28, 2024, Attorney Emmerich followed up with Attorney Korb via email with a proposed release and a message stating, "I drafted the attached to resolve satisfaction of the jury verdict and costs. Will this work?" Attorney Korb responded, "Works for me."

¶4   On June 4, 2024, Attorney Emmerich sent Attorney Korb a settlement draft, noting that "a condition of disbursal of these funds is your client signing the Release that I have forwarded and all parties stipulating to my

2

clients['] dismissal from the matter." On June 24, 2024, the parties submitted a Stipulation for Distribution of Settlement Proceeds, and the circuit court signed the corresponding order. However, a week later, Attorney Korb informed Attorney Emmerich that Lee would not sign the Release.

¶5 Lee then filed a motion to enforce the Stipulation for Distribution of Settlement Proceeds. Progressive filed a motion to reopen the judgment for the purpose of enforcing the requirement in the settlement agreement that Lee sign the Release. After holding a hearing on the two motions, the court reopened the judgment and scheduled an evidentiary hearing to determine whether the May 28, 2024 email exchange between Attorneys Emmerich and Korb was enforceable as a settlement agreement. At the evidentiary hearing, Attorney Korb testified that when he wrote, "Works for me," he was only communicating that the language of the Release "worked" for him, not his client. After hearing testimony, the circuit court concluded that the May 28, 2024 email exchange was an enforceable settlement agreement under WIS. STAT. § 807.05 (2023-24)[1] because it had been "subscribed" by Lee's attorney, Attorney Korb.

¶6 Lee appeals.

### DISCUSSION

¶7 The issue presented in this case is whether the May 28, 2024 email exchange between Attorneys Emmerich and Korb constitutes an enforceable settlement agreement. "Whether a settlement agreement is binding and enforceable is a question of law we review de novo." ***Paul R. Ponfil Trust v.***

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

*Charmoli Holdings, LLC*, 2019 WI App 56, ¶13, 389 Wis. 2d 88, 935 N.W.2d 308. Moreover, "[s]ettlement agreements entered into while litigation is pending are governed by WIS. STAT. § 807.05." *Ponfil Trust*, 389 Wis. 2d 88, ¶14. Statutory interpretation presents an issue of law that we review de novo. *Citation Partners, LLC v. DOR*, 2021 WI App 86, ¶17, 400 Wis. 2d 260, 968 N.W.2d 734.

¶8 "In construing a settlement agreement, we apply contract-construction principles." *Ponfil Trust*, 389 Wis. 2d 88, ¶16. A valid settlement agreement requires an offer, an acceptance, and consideration all resulting from mutual agreement. *Id.* Additionally, per WIS. STAT. § 807.05, "[n]o agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless ... made in writing and subscribed by the party to be bound thereby or the party's attorney."

¶9 The circuit court concluded that when Attorney Korb responded, "Works for me," he "subscribed" to the Release attached to Attorney Emmerich's email on behalf of Lee, and therefore, Lee was bound by the terms of the Release and was required to sign it. We disagree for several reasons.

¶10 As an initial matter, an email exchange between attorneys can constitute a binding settlement agreement under WIS. STAT. § 807.05, "provided all material terms are in writing *and are clearly accepted* in a writing subscribed by the party to be bound or that party's attorney." *Waite v. Easton-White Creek Lions, Inc.*, 2006 WI App 19, ¶7 n.4, 289 Wis. 2d 100, 709 N.W.2d 88 (emphasis added). In this case, however, Attorney Korb did not clearly accept and agree to bind Lee to the terms of the Release attached to Attorney Emmerich's email. At face value, Attorney Korb's response of "Works for me" does not constitute a clear acceptance to bind Lee to the Release. As Attorney Korb explained in his

4

unrebutted testimony, Attorney Korb's response merely confirms that the language of the release "worked for" Attorney Korb. "Works for me" is, at best, ambiguous with respect to *what* works (i.e., the language or substance of the Release) and *for whom* it works (i.e., Attorney Korb or Lee). An enforceable contract cannot form with such significant ambiguities with respect to what is being accepted by whom.

¶11    Additionally, as all Wisconsin attorneys well know, "the general rule is that an attorney has no authority to enter into a binding settlement agreement without his or her client's consent." ***D&D Carpentry, Inc. v. U.S. Bancorp***, 2010 WI App 122, ¶8, 329 Wis. 2d 435, 792 N.W.2d 193. "If a client believes that an attorney has acted without authority to settle a case, it is the client's burden to prove it." ***Id.***, ¶9.

¶12    Our supreme court's decision in ***Balzer v. Weisensel***, 258 Wis. 566, 46 N.W.2d 763 (1951) is instructive in this case. ***Balzer*** involved a written stipulation for settlement made after the case was called for trial. ***Id.*** at 566-67. Weisensel's attorney signed a written settlement agreement that was executed in open court despite Weisensel not being present in court or signing the agreement. ***Id.*** at 567. After the agreement was put on the record, the circuit court dictated an order dismissing the claims on their merits. ***Id.*** Weisensel objected to his attorney's actions after the fact. ***Id.*** The circuit court ordered Weisensel to show why the settlement judgment should not be entered. ***Id.*** However, although the order was served upon Weisensel personally and upon his attorney, Weisensel neither appeared in person nor filed an affidavit to show that his attorney's actions were unauthorized. ***Id.*** The circuit court ruled, based on the record before it, that Weisensel had "clothed his attorney with apparent authority" to settle the case. ***Id.*** at 569. Our supreme court affirmed, stating that if a client believes their attorney did not have the authority to settle the case which the client wished to litigate, then

the client has the burden of demonstrating this to the circuit court upon learning of such unauthorized action. *Id.*

¶13     In this case, there is unrebutted testimony that Attorney Korb did not intend, and did not have authority from Lee, to bind Lee to the Release attached to Attorney Emmerich's email. Because this testimony is undisputed, there is only one conclusion to draw: Lee did not authorize Attorney Korb to bind him to the Release, a document that Lee did not see until after Attorney Korb responded to Attorney Emmerich's email.

¶14     Progressive cites several cases for the proposition that attorneys can bind their clients to settlement agreements, but that is not the issue before us. In those cases, the acceptance of the settlement offer by an attorney was clearly and unambiguously on behalf of the client. For example, in *Kocinski v. Home Ins. Co.*, 147 Wis. 2d 728, 433 N.W.2d 654 (Ct. App. 1988), *aff'd as modified by Kocinski v. Home Ins. Co.*, 154 Wis. 2d 56, 452 N.W.2d 360 (1990), the plaintiff's attorney sent a letter to opposing counsel bearing the attorney's rubber-stamped signature that included an affirmation of the terms of the settlement in addition to the following statement: "Upon receipt of this money from the parties, [the plaintiff] will execute the required Releases." *Id.* at 732. Later, the plaintiff changed her mind about accepting the settlement, but this court held that the attorney's rubber-stamped signature satisfied the "subscribed" requirement of WIS. STAT. § 807.05. *Kocinski*, 147 Wis. 2d at 736. Similarly, in *Waite*, the communication at issue was a faxed letter stating: "my client accepts the

settlement as outlined in your letter[.]" ***Id.***, 289 Wis. 2d 100, ¶3. The federal cases cited by Progressive also follow this pattern.[2]

¶15     Unlike Attorney Korb's response email in this case, the communications in ***Kocisnki*** and ***Waite*** were clearly and unambiguously communications that the attorney's client agreed to be bound by the proposed release or settlement offer.

¶16     In sum, an attorney is allowed to bind a client to a settlement agreement under WIS. STAT. § 807.05 provided that the acceptance is clear and the attorney has authority from the client to bind them. If the client believes that their attorney's actions were unauthorized, it is their burden to show it, and in this case, there was not a clear and unambiguous acceptance by Attorney Korb, and the undisputed evidence in the record shows that Lee did not authorize Attorney Korb to agree on his behalf to be bound by the Release sent by Attorney Emmerich.[3]

---

[2] ***Iliadis v. Four Lakes Educ., Inc.***, 19-CV-232-WMC, 2020 WL 429139 at *2-3 (W.D. Wis. Jan. 28, 2020); ***HSBC Mortg. Servs., Inc. v. Daya***, No. 16-CV-80-JPS, 2016 WL 7156551 at *9-10 (E.D. Wis. Dec. 7, 2016).

[3] Before concluding, we make one observation. Progressive asserts that the issue on appeal is whether there was a "meeting of the minds" between the parties, and that determination is a factual one subject to review under the "clearly erroneous" standard. We disagree that the clearly erroneous standard applies to the issue presented in this case, but even if we are mistaken, we would conclude that finding a "meeting of the minds" on this record is clearly erroneous. The language of Attorney Korb's email is ambiguous with respect to who is agreeing to what, and the only evidence in the record to resolve that ambiguity is Attorney Korb's testimony that his "works for me" response email to Attorney Emmerich was intended only to convey Attorney Korb's approval of the language used in the Release drafted by Attorney Emmerich and not intended to convey that Lee agreed to be bound by that language.

## CONCLUSION

¶17    For the foregoing reasons, we conclude that the May 28, 2024 email exchange between Attorneys Emmerich and Korb does not constitute an enforceable settlement agreement.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.